JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
Pennsylvania Bar No. 200663
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
Tel: (202) 353-0533
Email: Eric.Soskin@usdoj.gov
*Attorneys for Intervenor United States of America*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Carlos D. Travieso,<br><br>               Plaintiff,<br><br>   vs.<br><br>GLOCK, *et al.*,<br><br>              Defendants. | 2:20-cv-00523-SMB<br><br>**BRIEF OF UNITED STATES IN RESPONSE TO FED. R. CIV. P. 5.1 NOTICE OF CONSTITUTIONAL CHALLENGE IN PLAINTIFF'S RESPONSE TO MOTION TO DISMISS, ECF NO. 21** |

**INTRODUCTION**

Pursuant to 28 U.S.C. § 2403(a) and Fed. R. Civ. P. 5.1(c) and 24(a)(1), the United States of America has intervened in this case to present argument on the constitutional issues regarding the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903 ("PLCAA" or "Act") raised in Plaintiff's July 31, 2020 Response to Defendant's Motion to Dismiss (ECF No. 21) ("MTD Opp.").[1]

The Ninth Circuit has previously sustained against a variety of constitutional challenges "PLCAA['s] general[] preempt[ion] [of] claims against manufacturers and

---

[1] The United States takes no position on whether PLCAA forecloses this suit.

sellers of firearms and ammunition resulting from the criminal use of those products," thereby controlling many of the claims here. *Ileto v. Glock*, 565 F.3d 1126, 1131 (9th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010). Indeed, almost "[e]very federal and state appellate court to address the constitutionality of PLCAA has found it constitutional" in "sound" decisions. *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1222 (D. Colo. 2015) (citing cases).[2] Virtually identical arguments to those advanced by Plaintiff here have been rejected in such prior PLCAA litigation. *See, e.g., id.*; *Ileto*, 565 F.3d 1138 (due process, equal protection, and constitutional avoidance claims); *City of New York v. Beretta* ("*City of New York*"), 524 F.3d 384, 392-98 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009) (Tenth Amendment claims); *Delana v. CED Sales, Inc.*, 486 S.W. 3d 316, 323-24 (Mo. 2016) (Tenth Amendment, due process); *Estate of Kim v. Coxe*, 295 P.3d 380, 388-92 (Alaska 2013) (Tenth Amendment, equal protection, due process); *Adames v. Sheahan*, 909 N.E.2d 742, 764-65 (Ill. 2009), *cert. denied*, 558 U.S. 1100 (2009) (Tenth Amendment).

Nevertheless, Plaintiff argues that PLCAA is either unconstitutional, or should be construed narrowly in light of federalism principles to bar application of the Act's express terms to Plaintiff's claims, *see* MTD Opp. at 2-5, an argument that has likewise been squarely rejected. *See Delana*, 486 S.W. 3d 323; *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1132 n.3. As explained in many of these prior cases—and as elaborated below—Plaintiff's constitutional claims each fail for reasons specific to that claim:

- **Due Process**. Plaintiff cannot succeed on his due process claim because: 1)

---

[2] The sole exception of which the United States is aware is a recent decision by an intermediate appellate court in Pennsylvania, in which the court concluded that PLCAA exceeds congressional authority under the Commerce Clause and the Tenth Amendment. *See Gustafson v. Springfield, et al.*, slip op. 38-40, 57-59, 2020 PA Super. 239, No. 207-WDA-2019 (Sept. 28, 2020). That opinion conflicts with controlling Ninth Circuit law regarding PLCAA and the regulation of firearms in commerce. *See Ileto*, 565 F.3d 1141 (stating, as a necessary part of its decision that PLCAA did not violate the Fifth Amendment, that "Congress has not exceeded its authority" under the Commerce Clause) (quoting *City of New York*, 524 F.3d at 395); *compare also Gustafson*, slip op. at 40 (Congress could not exercise its authority to regulate a firearm after "that gun passed through interstate commerce") *with U.S. v. Alderman*, 565 F.3d 641, 644-45 (9th Cir. 2009) (Congress may regulate body armor based on its past sale in interstate commerce).

he "has no property, no vested interest" in unlitigated common-law tort claims. *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 88 n.32 (1978) (internal quotations omitted)); *see id.* ("statutes limiting liability are relatively commonplace and have consistently been enforced by the courts"); and 2) even if Plaintiff had such a property interest, he has not been deprived of all remedies. *See Ileto*, 565 F.3d at 1140-44 (rejecting due process argument for multiple reasons, including that "Congress has left in place a number of substitute remedies"); *District of Columbia v. Beretta*, 940 A.2d 163, 177 n. 8 (D.C. Ct. App. 2008) (similar).

- **Equal Protection**. Plaintiff's Fifth Amendment equal protection argument fails because he concedes that the easily-satisfied rational basis standard applies to this claim, and "Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits," interstate commerce would be protected. *Ileto*, 565 F.3d 1140-41; *see also City of N.Y. v. Beretta U.S.A. Corp.* ("*N.Y. v. Beretta*"), 401 F. Supp. 2d 244, 295 (E.D.N.Y. 2005) (Weinstein, J.) (Congress had rational basis to find that "nationwide commerce in firearms was particularly imperiled by the threat" of the lawsuits restricted by the Act in rejecting equal protection challenge to PLCAA, while finding that an exception to PLCAA applied to allow the suit), *rev'd on other grounds, City of New York*, 524 F.3d 384 (2009) (equal protection not addressed). Congress also could rationally find that state legislative processes would provide a forum in which the interests of other states, interstate commerce as a whole, or the effects of tort liability on the rights of Americans to keep and bear arms would be more likely to be considered.

- **Tenth Amendment**. PLCAA does not violate the Tenth Amendment or otherwise interfere with the sovereign rights of the State of Arizona. The Act merely preempts certain inconsistent state laws, consistent with constitutional principles of federalism. *See, e.g. City of New York*, 524 F.3d at 397; *Delana*, 486 S.W. 3d at 322-23; *Coxe*, 295 P.3d at 388-89; *Adames*, 909 N.E.2d at 764-65. Indeed, the very premise of Plaintiff's Tenth Amendment claim is incorrect: PLCAA does not create a wholesale difference in treatment between common law and statutory claims, as Plaintiff suggests.

Rather, PLCAA bars some categories of statutory claims and maintains some categories of judicially-created claims. See 15 U.S.C. § 7903(5)(A)(ii), (iv), (v).

- **Federalism**. PLCAA need not be construed narrowly, as Plaintiff contends. Plaintiff's arguments that a narrow construction is required are grounded in a doctrine of constitutional avoidance, which authorizes a court to choose among competing interpretations of a genuinely ambiguous statute only to escape an interpretation that creates "serious constitutional problems." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 577 (1988). As explained above, there are no such serious constitutional concerns here. Moreover, because PLCAA's purposes include *protecting* federalism and comity among states, and protecting individual constitutional rights from animus at the state and municipal level, PLCAA should be interpreted in a manner that advances, not frustrates, its purposes.

In short, PLCAA is constitutional and Plaintiff's arguments to the contrary should be rejected, as this brief explains in further detail.

## STATUTORY BACKGROUND

PLCAA bars certain tort actions that threaten to disrupt Americans' ability to exercise the individual right to keep and bear arms recognized in the Second Amendment to the United States Constitution or to interfere with interstate and foreign commerce in firearms. *See* 15 U.S.C. § 7901. PLCAA therefore provides that "[a] qualified civil liability action" against the manufacturers or sellers of firearms "may not be brought in any Federal or State court." *Id.* §§ 7902, 7903(5)(A). The Act defines a "qualified civil liability action" to include "a[ny] civil action or proceeding . . . against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief . . . or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." *Id.* § 7903(5)(A). The Act provides exceptions that allow certain classes of actions to continue to be brought. *See id.* §§ 7903(5)(A)(i)-(vi). These include claims for negligent entrustment and negligence per se, *id.* § 7903(5)(A)(ii), claims for breach of contract or warranty, *id.* § 7903(5)(A)(iv), claims

based on defective products when "not caused by a volitional act that constituted a criminal offense," *id*. § 7903(5)(A)(v), and claims based on knowing violations of statutes "applicable to the sale or marketing of the product," where "the violation was a proximate cause of the harm for which relief is sought," *id*. § 7903(5)(A)(iii).

Congress enacted PLCAA for three primary reasons, which are set forth in the statutory text. First, Congress acted to protect the constitutional "rights of individuals . . . to keep and bear arms," as recognized by the Second Amendment to the United States Constitution, against the "diminution of [this] basic constitutional right and civil liberty" by "[t]he possibility of imposing liability" in qualified civil liability actions. 15 U.S.C. §§ 7901(a)(1)-(2); 7901(a)(6); *see also id*. § 7901(b)(2) ("preserv[ing] a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting [and] self-defense"). Second, Congress acted to ensure that "[b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms . . . in interstate commerce . . . are not . . . liable for the harm caused by those who criminally or unlawfully misuse firearm products[.]" *Id*. § 7901(a)(5). Third, Congress acted to protect: (1) "the rights, privileges, and immunities guaranteed" by the Fourteenth Amendment and (2) "interstate and foreign commerce . . . [and] important principles of federalism, State sovereignty, and comity between the sister States," from "liability actions commenced or contemplated" by, *inter alia*, "States, municipalities, and private interest groups and others" through an "expansion of the common law." *Id*. §§ 7901(a)(7), (a)(8).

## ARGUMENT

### I.  PLCAA Does Not Violate the Tenth Amendment.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Supreme Court has explained that the Tenth Amendment limits "the circumstances under which Congress may use the States as implements of regulation." *New York v. United States*, 505 U.S. 144, 161 (1992).

The federal statute at issue in *New York* unconstitutionally "'commandeer[ed]' state governments" by forcing them to enact regulation according to Congress's instructions. 505 U.S. at 175. In *Printz v. United States*, 521 U.S. 898, 935 (1997), the federal statute comparably "conscript[ed]" local law enforcement officials by requiring them to perform background checks in connection with firearms sales.

Plaintiff maintains that PLCAA violates the Tenth Amendment by including an exception for certain statutory claims, but not equivalent common-law claims, thus purportedly "infring[ing] on state lawmaking authority," by "choos[ing] which branch of government . . . make[s] law." MTD Opp. at 13-14. In *City of New York*, the Second Circuit rejected this exact argument, *see* 524 F.3d at 396-97, as have multiple state courts. *See Delana*, 486 S.W. 3d at 323-24; *Coxe*, 295 P.3d at 388-92; *Adames*, 909 N.E.2d 764-65. As the Second Circuit explained, "the critical inquiry with respect to the Tenth Amendment is whether [] PLCAA commandeers the states." 524 F.3d at 396, and PLCAA "does not commandeer any branch of state government because it imposes no affirmative duty of any kind on any of them." *Id.* at 397 (internal citations and quotation marks omitted); *see also Connecticut v. Physicians Health Servs., Inc.*, 287 F.3d 110, 122 (2d Cir. 2002) ("Federal statutes validly enacted under one of Congress's enumerated powers—here, the Commerce Clause—cannot violate the Tenth Amendment unless they commandeer the states' executive officials or legislative processes") (citation omitted); *Delana*, 486 S.W. 3d at 323 (same reasoning with respect to PLCAA); *Adames*, 909 N.E.2d at 764-65 (adopting Second Circuit's reasoning). Because it "is within Congress's enumerated powers and does not commandeer state actors, the PLCAA does not violate the protections of the Tenth Amendment." *Coxe*, 295 P.3d at 389.[3]

Plaintiff contends that Congress's enactment of PLCAA nevertheless violated the Tenth Amendment because, rather than preempt certain claims all together, it included an

---

[3] Plaintiff's suggestion that PLCAA is not a "form of . . . preemption" because it does not "regulate[] the conduct of private actors," MTD Opp. at 14, is incorrect. PLCAA in part regulates private conduct by preempting private tort suits that fall within its scope.

exception to PLCAA's statutory preemption for certain types of statutory claims.[4] This limitation on the scope of federal preemption does not implicate the Tenth Amendment in any sense. *See City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1117 (9th Cir. 2014) ("nothing in the text or structure of the Constitution" precludes "federal preemption . . . when Congress properly exercises its enumerated powers").

As an initial matter, there is little logic to Plaintiff's contention that the Tenth Amendment is offended because Congress chose to partially preempt state law (by providing an exception) rather than choosing to fully preempt state law. Congress can, pursuant to the operation of the Supremacy Clause, preempt state tort law if the state law imposes a burden on interstate commerce and Congress clearly manifests an intent to preempt it. *See* U.S. Const. art. VI ("[T]he Laws of the United States . . . shall be the [S]upreme Law of the Land."); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 570-72 (1996); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996).[5] If, as here, Congress chooses to limit the scope of preemption within a given state by exempting a certain category of claims, that hardly causes *greater* interference with state prerogatives.

Second, Plaintiff's claim is notably deficient in legal support. Plaintiff points to no federal court case invalidating a federal statute on the grounds he urges. Indeed, in *City of Spokane*—the principal case Plaintiff cites as authority for a Tenth Amendment

---

[4] In *Ileto*, the Ninth Circuit explained this "predicate exception" in detail, noting that, to invoke the exception, a plaintiff must, *inter alia*, "allege a knowing violation of a 'predicate statute,'" *i.e.*, "a State or Federal statute applicable to the sale or marketing of the product." 565 F.3d 1132-33. The specifics of the "predicate exception" have no bearing on the error in Plaintiff's contention that the *existence* of the "predicate exception" renders PLCAA invalid under the Tenth Amendment.

[5] In *Gustafson*, the court found that PLCAA violates the Tenth Amendment because "the PLCAA is tort reform" rather than industry regulation, slip op. at 57, but it is well-established that Congress may expressly preempt state tort laws to limit liability and promote federal interests. *See Garcia v. Vanguard Car Rental, Inc.*, 540 F.3d 1242, 1252-53 (11th Cir. 2008) (rejecting challenge to federal preemption of state tort liability for car-rental agencies); *Hammond v. U.S.*, 786 F.2d 8, 15 (1st Cir. 1986) (preemption of tort remedies under Atomic Weapons Testing Liability Act did not violate Tenth Amendment); *Sparks v. Wyeth Labs.*, 431 F. Supp. 411, 419 (W.D. Ok. 1977) (preemption of tort remedies under Swine Flu Act did not violate Tenth Amendment)

challenge "distinct from 'commandeering,'" *see* MTD Opp. at 15—the Ninth Circuit rejected outright a non-commandeering Tenth Amendment challenge because the statute at issue was a straightforward exercise of Congress's "enumerated powers," including, as here, under the Commerce Clause. *See City of Spokane*, 775 F.3d at 1117-18 (9th Cir. 2014) ("general principles of federalism" do not preclude federal preemption). Nor does the state court decision in *In re Vargas*, 10 N.Y.S.3d 579 (N.Y. App. Div. 2015), suggest any constitutional flaw in PLCAA. There, a statute prohibited States from issuing professional licenses to undocumented immigrants absent a new state enactment authorizing the license grant, *see* 8 U.S.C. § 1621, but New York law provided that only the judiciary could wield the "sovereign authority" of the State. *Vargas*, 10 N.Y.S.3d at 582. Here, nothing in the law of Arizona prevents the legislature from enacting tort laws, and Plaintiff does not argue that PLCAA prevents the state government from taking such action, or any other action. Instead, PLCAA is a routine enactment by Congress that, *inter alia*, "adjust[s]. . . the burdens and benefits of economic life," *Ileto*, 565 F.3d 1138-39, 1141, and it does not commandeer state officials. PLCAA therefore does not violate the Tenth Amendment.[6] *See City of Portland v. U.S.*, 969 F.3d 1020, 1049 (9th Cir. 2020) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States") (quoting *New York*, 505 U.S. 156).

Third, PLCAA does not effect a wholesale shift of power between the state judiciary and legislature, as Plaintiff implies. As noted above, *see supra* p. 4, the exceptions to PLCAA preserve claims that may be validly created by either the legislature or the judiciary, including negligent entrustment, negligence per se, breach of contract or warranty, and defective design or manufacture. 15 U.S.C. § 7903(5)(A)(ii), (iv), (v). The

---

[6] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), cited by Plaintiff, *see* MTD Opp. at 14, has no application here. That case, which stands for the proposition that "[t]here is no federal general common law," does not bar *preemption* of state tort law. *Id*. at 78. And the language that Plaintiff cites does not apply where "matters [are] governed by the Federal Constitution or by acts of Congress," as here. *Id*.; *see Lehman Brothers v. Schein*, 416 U.S. 386, 389 (1974) (under *Erie*, a state is free to make its own common law, "providing there is no overriding federal rule which pre-empts state law" through federal regulation of "the stream of commerce").

standards for all of these could come from either statutory or common law. It is simply not the case, as Plaintiff asserts, that every claim sanctioned by a legislature is preserved, while every rule adopted by a court is preempted, or that PLCAA "deprive[s] a state of its right to choose which branch of government to use to make law." MTD Opp. at 14. For these reasons, too, PLCAA does not offend the Tenth Amendment.

## II.     PLCAA Does Not Violate the Fifth Amendment.

Plaintiff also contends that PLCAA violates the Fifth Amendment's Due Process Clause and that Amendment's equal-protection component, but these claims have been rightly rejected by numerous courts, for the reasons set forth below.

### A.     PLCAA Does Not Violate Due Process.

To successfully advance a due process claim, a plaintiff must demonstrate both a "depriv[ation] of life, liberty, or property" and that the deprivation was "without due process of law." U.S. Const. amend V. Plaintiff's effort to demonstrate that PLCAA violates due process by "eliminat[ing] any remedy" is factually wrong, and in any case, establishes neither a deprivation of property nor a lack of process.

As an initial matter, it is simply not the case that PLCAA "eliminates any remedy," MTD Opp. at 15, for Plaintiff's injury. Plaintiff may sue the individual who "came to possess the handgun," Compl. ¶ 33, and then "shot [Plaintiff] in the back." *Id.* ¶ 37. Plaintiff may sue the individual who was "driving several children home," *id.* ¶ 30, and allowed those children to possess and misuse a handgun. Plaintiff may also sue the owner of the handgun—possibly one of the same individuals, but the Complaint does not say—who permitted a group of children to gain control over his or her weapon, or any other individual whose negligent or intentional conduct proximately led to his injuries. And Plaintiff may even sue the manufacturers, distributors, and sellers of the firearm used in the shooting under any claim that falls within the text of the Act's exceptions. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi). For these reasons, the Ninth Circuit correctly held in *Ileto* that "PLCAA does not completely abolish Plaintiff['s] ability to seek redress." 565 F.3d at 1143; s*ee Dist. of Col.*, 940 A.2d at 177 n. 8 (D.C. Ct. App. 2008) (similar).

Second, it is black-letter law that there is no constitutional property right in unfiled tort litigation, and thus, that PLCAA effects no "deprivation of property" as to Plaintiff. The Constitution "does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver*, 280 U.S. 117, 122 (1929). Accordingly, "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *New York Cent. R.R. Co. v. White*, 243 U.S. 188, 198 (1917); *see Duke Power* 438 U.S. 88 n.32 (1978). For this reason, the Ninth Circuit in *Ileto* held that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." 565 F.3d 1141. Numerous other courts of appeals have likewise concluded that there are not protected property interests in pre-judgment tort claims, even those already pending. *See, e.g.*, *Schmidt v. Ramsey*, 860 F.3d 1038, 1046 (8th Cir. 2017); *In re TMI*, 89 F.3d 1106, 1113 (3d Cir. 1996); *Ducharme v. Merrill-National Labs.*, 574 F.2d 1307, 1309-10 (5th Cir. 1978); *Carr v. United States*, 422 F.2d 1007, 1010-11 (4th Cir. 1970). Because plaintiff has no property right in his tort claims, his due-process challenge cannot succeed.[7]

Even if Plaintiff could establish that a property right exists in a cause of action abolished prior to the occurrence of an alleged tort, as here, his contention that PLCAA must "supply an alternate remedy" to satisfy the Due Process Clause is without merit. The Constitution imposes no such requirement. *See, e.g., Martinez v. California*, 444 U.S. 277, 280 (1980) (upholding statute barring tort suits over "[a]ny injury resulting from determining whether to parole or release a prisoner"); *Silver*, 280 U.S. at 121-22; *Schmidt*, 860 F.3d 1048-49; *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (upholding against separation-of-powers challenge statute that provided that all actions relating to a single piece of property "shall be promptly dismissed"). Those cases are indistinguishable from this one. And in any event, as explained above, PLCAA does not completely abolish

---

[7] This suit is therefore distinguishable from *City of Gary v. Smith & Wesson Corp.*, No. 45D05-005-CT-00243 (Ind. Super. Ct. Oct. 23, 2006), *aff'd on other grounds*, 875 N.E.2d 422 (Ind. Ct. App. 2007). In that case, PLCAA became law after plaintiffs brought their suit. *See* Pl. Br. Ex. E, at 2. The Court of Appeals of Indiana ultimately held that PLCAA did not bar the suit, without reaching the constitutional issue. 875 N.E.2d at 434-45.

Plaintiff's ability to seek redress" through other tort claims. *Ileto*, 565 F.3d at 1143.[8]

### B.   PLCAA Does Not Pose Equal Protection Concerns.

PLCAA cannot meaningfully be said to discriminate among classes of victims. Plaintiff asserts that the availability of different causes of action to plaintiffs in different states violates equal protection principles, but PLCAA merely preempts certain state law causes of action, and the so-called "classes" identified by Plaintiff are not cognizable under equal protection. *See San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) (equal protection only implicated where legislation "create[s] discrete and objectively identifiable classes"); *Berger v. City of Seattle*, 512 F.3d 582, 609 n.3 (9th Cir. 2008) (Berzon, J., concurring and dissenting in part) (actions that are not "class-based . . . [do] not implicate equal protection"); *Hill v. Overton Cty., Tenn.*, 205 F.3d 1340 at *1 (Table) (6th Cir. 2000) ("difference[s] in statutes of limitation do[] not implicate . . . equal protection"). Plaintiff has therefore not identified a classification drawn by the statute that can be the subject of an equal protection challenge.

Further (as Plaintiff acknowledges), even if an equal protection challenge of this sort is cognizable, his claim would be subject to rational basis review. *See* MTD Opp. at 17; *see Ileto*, 565 F.3d 1141 (there is no "suspect classification common to those adversely affected by [] PLCAA"). Plaintiff cannot meet this demanding standard, because he must demonstrate that there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993); *see id. (*the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it"0 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

As a general rule, equal protection principles do not require a legislature to treat

---

[8] Plaintiff asserts that *Ileto* can be distinguished as a case in which there were "alternative remedies" but that "there is no available" remedy here. Not so. In *Ileto*, the Ninth Circuit held that plaintiffs could "proceed on their claims" against only a single defendant, and, in response to the dissent, explained that this possibility sufficiently ensured that the "ability to seek redress ha[d] been limited, but not abolished." 565 F.3d at 1143; *see id.* at 1144 (noting that the relevant analysis is whether the *statute* "contains . . . exceptions" and whether, at the statutory level, "Congress has left in place . . . substitute remedies).

all types of tort lawsuits identically when it acts to foreclose or limit tort liability. *See, e.g.*, *Miller v. U.S.*, 73 F.3d 878 (9th Cir. 1995); *Collins v. Schweitzer*, 21 F.3d 1491 (9th Cir. 1994). Here, "Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits," interstate commerce would be protected. *Ileto*, 565 F.3d 1140-41; *see also City of N.Y.*, 401 F. Supp. 2d 295. Congress also rationally concluded that the unpredictability of common law tort actions could pose a greater threat to the firearms industry than would defined legislative enactments that are necessarily passed by democratically accountable actors. *See* 15 U.S.C. § 7901(a)(7) (expressing specific concern about the "expansion of liability" by a "judicial officer or petit jury"); *accord Martin v. Harrington and Richardson*, 743 F.2d 1200, 1204 (7th Cir. 1984) (judicially-created "liability for the sale of handguns . . . would in practice drive manufacturers out of business [and] produce a handgun ban by judicial fiat in the face" of constitutional and statutory protections of the right to keep and bear arms and associated rights). And Congress could rationally conclude that broad public interests, including the interests of federalism, comity among States, interstate commerce, and individual constitutional rights would be more likely to receive due consideration in a public legislative forum. *See Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857 (2017). Any of these conclusions is all that is required under rational basis review.[9]  *See, e.g.*, *Ileto v. Glock*, 421 F. Supp. 2d 1274, 1301 (C.D. Cal. 2006) (PLCAA advances rational basis of "prevent[ing] a perceived undue burden on interstate commerce caused by what Congress has determined to be 'predatory' lawsuits against the firearms industry").

**III.     Federalism Principles Do Not Require That PLCAA Be Read Narrowly**.

Plaintiff argues that principles of constitutional avoidance mandate the adoption of his particular, narrow interpretation of PLCAA. His interpretation may be correct, but if so, it is not for constitutional reasons. Constitutional avoidance requires "serious constitutional problems" of the sort not present here. *DeBartolo*, 485 U.S. 575, 587.

---

[9] Indeed, it is *more* than is required under rational-basis review, because "a legislature that creates [non-suspect] categories need not actually articulate at any time the purpose or rationale supporting its classification." *Heller v. Doe ex rel. Doe*, 509 U.S. 320.

Further, because core purposes of the statute are to protect federalism and constitutional rights, the statute should not be construed narrowly when doing so would frustrate those purposes. Finally, Plaintiff's argument fails on its own terms because PLCAA makes explicit its intent to preempt state tort law.

### A. There Is No Serious Constitutional Question Presented Here.

As the Ninth Circuit explained in *Ileto*, courts "may invoke the doctrine" of constitutional avoidance "only [upon] 'grave doubts' about the constitutionality of [a] statute." 565 F.3d 1143 (quoting *Almendarez–Torres v. United States*, 523 U.S. 224, 237–38 (1998)). This requires more than the "mere mention" of a constitutional problem, *National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008), but "a *serious likelihood* that the statute will be held unconstitutional." *Ileto*, 565 F.3d 1143 (emphasis in original) (internal quotations omitted). Here, as explained above, there are no serious constitutional problems with PLCAA, so avoidance principles do not apply. *See Ileto*, 565 F.3d at 1144 ("declin[ing] to apply the doctrine of constitutional avoidance").

Plaintiff's authorities, *Gregory v. Ashcroft*, 501 U.S. 452 (1991), and *Bond v. United States*, 572 U.S. 844 (2014), are specific applications of the general constitutional-avoidance principle. In those cases, the Supreme Court explained that statutes should be narrowly construed if necessary to avoid "upset[ting] the usual constitutional balance of federal and state powers," thereby creating "a potential constitutional problem." *Gregory*, 501 U.S. at 460, 464; *see Bond*, 572 U.S. at 858, 860. In *Gregory*, the Court expressed concern that interpreting federal law to invalidate a mandatory retirement age for state judges would undermine the "authority of a State's people to determine their government officials' qualifications," an authority that the Court suggested "may be inviolate." 501 U.S. at 464. In *Bond*, the constitutional risk existed because an expansive reading of the federal criminal statute would have permitted federal prosecution of "purely local crimes," a "dramatic[] intru[sion]" on "state criminal jurisdiction." *Id.* at 860, 863 (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)). The unremarkable preemption of state tort law in PLCAA raises no similar constitutional concern or federalism issue.

*See Prescott*, 410 F. Supp. 3d at 1132 n.3 (rejecting argument that federalism principles stated in *Gregory* and *Bond* require "a narrower construction" of PLCAA"); *accord Delana*, 486 S.W. 3d 322-23; *see generally Ileto*, 565 F.3d 1135-46; *Riegel v. Medtronic*, 552 U.S. 312, 326 (2008) (rejecting dissent and finding no serious constitutional issue raised by preemption of tort laws where "the statute itself speaks clearly to the point").

### B. A Narrowing Construction Is Not Appropriate Because PLCAA's Core Purposes Include Protecting Principles Of Federalism And Individual Constitutional Rights.

Plaintiff's contention that the Court should deviate from the plain text of PLCAA in service of "federalism" rings hollow because Congress enacted PLCAA, in part, to *protect* federalism by precluding individual states from regulating commerce to the detriment of the sovereignty of other states, principles of federalism, and the Full Faith and Credit Clause. *See* 15 U.S.C. §§ 7901(b)(6),(7); H.R. Rep. No. 109-124 at 21-22 (2005) (documenting individual state and municipal "efforts at extraterritorial regulation").[10] In PLCAA, Congress recognized that this state-law backdrop presented a serious risk that the liability regimes of some states would thwart the commercial interests of other sovereign states and their protections for their citizens' rights to keep and bear arms. Where Congress acts to prevent States from transgressing on the system of constitutional federalism by "project[ing] . . . one [S]tate regulatory regime into the jurisdiction of another," such actions specifically advance the federal-state balance that "the Commerce Clause protects." *Healy v. Beer Inst.*, 491 U.S. 324, 336-37 (1989); *see also BMW*, 517 U.S. at 572 (discussing tort liability and "principles of state sovereignty").

Similarly, when Congress legislates to remedy the violation of constitutional rights, courts apply a presumption that the statute should be "broadly interpret[ed]" to

---

[10] This is well illustrated by the competing legislative measures adopted by neighboring jurisdictions during the years preceding enactment of PLCAA. For example, Virginia restricted municipal lawsuits against firearms manufacturers and others to ensure, *inter alia*, that the industry would remain capable of supporting the right to keep and bear arms. *See* Va. Code Ann. § 15.2-915.1 (2006). Meanwhile, at least one neighboring jurisdiction, the District of Columbia, imposed absolute liability on the makers of firearms for any injuries caused by some models of weapons. *See* D.C. Code Ann. §§ 7-2551.01 (2006).

effectuate its purpose, *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 816 (9th Cir. 2002), and greater deference to Congress's actions is warranted than where Congress acts to "restrict or deny" such rights. *Katzenbach v. Morgan*, 384 U.S. 641, 657 (1966). At a minimum, such statutes are to be interpreted according to their text, history, structure, and purpose, with reference to the findings and Congressional determinations underpinning the statute. *See, e.g.*, *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 738 (2003) (relying on statutory text and congressional determinations to affirm constitutionality of Family and Medical Leave Act); *Tennessee v. Lane*, 541 U.S. 509, 526-27 (relying on examples identified by Congress in upholding ADA).

Here, a major purpose of PLCAA is to protect the right to keep and bear arms recognized in the Second Amendment, *see* 15 U.S.C. §§ 7901(a)(1), (2), (b)(2), by "guarantee[ing] a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment." 15 U.S.C. § 7901(b)(3). As the Supreme Court has explained, Congress is entitled to enforce rights protected by the Constitution against the States and to use measures, including "preventive rules . . . [as] appropriate remedial measures," where there is "a congruence between the means used and the ends to be achieved." *City of Boerne v. Flores*, 521 U.S. 507, 530 (1997). The legislative history of PLCAA documents the manner in which state and local government entities had improperly wielded common-law litigation to interfere with the exercise of the right to keep and bear arms. *See* H.R. Rep. 108-59 at 10-12, 56-57; *compare Teixeira v. Cty. of Alameda*, 873 F.3d 670, 697 (9th Cir. 2017) (Bea, J., dissenting) (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)); *USDA v. Moreno*, 413 U.S. 528, 534 (1973) (discussing limits to legitimate government interests).[11] And Congress targeted PLCAA congruently to the

---

[11] *See also*, *e.g.*, 151 Cong. Rec. S9074 (Statement of Sen. Frist) ("Since 1997, more than 30 cities and counties have sued firearms companies in an attempt to force them to change the way they make and sell guns . . . manufacturers have already spent more than $200 million in legal fees to defend themselves . . . If the gun industry is forced into bankruptcy, the right to keep and bear arms will be a right in name only. Even if some gunmakers are able to hold on, the prices for firearms . . . will go sky-high"); H.R. Rep. No. 109-124 at 11 n.48 (2005) (enumerating 18 different lawsuits filed in the late 1990s and early 2000s);

threat it identified: that judicial decisions could "impos[e] liability on an entire industry for harm that is solely caused by others," 15 U.S.C. §§ 7901(a)(6), (7), thereby curtailing the right to acquire firearms through purchase or manufacture "necessary to the realization of the core right to possess a firearm for self-defense." *Teixeira*, 873 F.3d 676 (collecting cases); *see District of Columbia v. Heller*, 554 U.S. 570, 617-18 (2008) ("to bear arms implies something more than the mere keeping") (internal quotation omitted); *Jackson v. City & Cty. of S.F.,* 746 F.3d 953, 967 (9th Cir. 2014); *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011); *cf. Minneapolis. Star & Trib Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575 (1983). Because Congress reasonably acted to protect the right to keep and bear arms in light of the efforts by states, municipalities, and other litigants to interfere with that right by imposing liability on firearms retailers and manufacturers, the Constitution does not require interpreting PLCAA narrowly when doing so would frustrate statutory purpose of protecting the right.[12] *See CFTC v. Schor*, 478 U.S. 833, 841 (1986) (constitutional avoidance "does not give a court the prerogative to ignore the legislative will"); *Niece v. Fitzner*, 941 F. Supp. 1497, 1505 (E.D. Mich. 1996) ("canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes … is also applied to civil rights statutes").

---

Br. of Amicus Curiae Profs. Of Second Amendment Law, *et al*., *Remington Arms Co., LLC v. Soto*, No. 19-168, 2019 WL 4256978 (Sept. 4, 2019).

[12] PLCAA and its legislative history contain numerous specific findings about this threat to the right to keep and bear arms, *see* 15 U.S.C. § 7901(a), and indeed, Plaintiff's lawsuit is precisely the type of effort to "force [manufacturers] to change the way they make and sell guns" that Congress sought to address. *Compare* 151 Cong. Rec. 104 at S9074 (Statement of Sen. Frist) *and* 151 Cong. Rec. S9087 (PLCAA "intended to protect . . . firearms industry" from lawsuits "intended to regulate the industry") (Statement of Sen. Baucus) *with* Complaint at pp.14-15 (setting forth Plaintiff's theory that manufacturers should be forced to design firearms differently, such as by requiring "the turn of a special key" to operate). PLCAA's legislative history is replete with specific examples of the threat to firearms rights posed by the preempted lawsuits. *See, e.g*., 151 Cong. Rec. 104 at S9062 (Statement of Sen. Coburn) (July 27, 2005) (describing the purpose of the bill as "in support of . . . the second amendment and the right to carry arms and against the attack on that right by [] frivolous lawsuits . . . attack[ing] the arms industry financially . . . Since 1988, individuals and municipalities have filed dozens of novel lawsuits against members of the firearms industry . . . intended to drive the gun industry out of business by holding manufacturers and dealers liable for the intentional and criminal act of third parties over whom they have absolutely no control").

**C. Congress Has Plainly Stated Its Intent To Preempt State Tort Law.**

In any event, PLCAA clearly indicates Congress's express intent to "prohibit causes of action" brought under state tort law. 15 U.S.C. § 7901(b)(1); *see id.* § 7902(a) (providing that covered tort actions "may not be brought in any Federal or State court"). The Ninth Circuit recognized this in *Ileto*, holding that "congressional intent [to preempt state tort claims] is clear from the text and purpose of the statute." 565 F.3d at 1135-36, 1142-43. Here, unlike in *Bond*, *see* 572 U.S. at 859-60, 863, it is well-established that Congress may preempt state tort causes of action, *see supra* p. 7, and there is therefore no reason to search for an ambiguity from which to override the statutory text, as Plaintiff proposes. *See* MTD Opp. at 3-4. Likewise, Congress left no ambiguity in its statements of findings and purposes, where it established that PLCAA limits liability from "the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended." 15 U.S.C. § 7901(a)(5).[13]  Thus, "[b]ecause Congress has expressly and unambiguously exercised its constitutionally delegated authority to preempt state law negligence actions against [manufacturers and] sellers of firearms, there is no need to employ a narrow construction to avoid federalism issues." *Delana*, 486 S.W.3d at 323; *see also Prescott*, 410 F. Supp. 3d 1132 n.3 (D. Nev. 2019) ("reject[ing] . . . argument in favor of a narrower construction of the PLCAA").

## CONCLUSION

For the foregoing reasons, the Constitution does not require the Court to invalidate PLCAA or to deviate from the text of PLCAA in construing PLCAA's terms.

RESPECTFULLY SUBMITTED,

---

[13] Subject to exceptions not pleaded here, it is unlawful under Arizona law for "an unemancipated person who is under eighteen years of age . . . [to] knowingly carry or possess . . . a firearm in any place . . . except private property owned or leased by the minor or the minor's parent, grandparent or guardian." Ariz. Stat. 13-3111(A). A violator "is guilty of a class 6 felony," Ariz. Stat. 13-3111(H), and the statute describes violations as "criminal conduct." Ariz. Stat. 13-3111(G) ("A minor who violates this section may be prosecuted and adjudicated delinquent for any *other* criminal conduct involving the use or exhibition of the deadly weapon") (emphasis added).

1
2  September 29, 2020				JEFFREY BOSSERT CLARK
3							Acting Assistant Attorney General
							LESLEY FARBY
4							Assistant Branch Director
5
							By: */s/ Eric J. Soskin*
6							ERIC J. SOSKIN
							Senior Trial Counsel
7							U.S. Department of Justice
8							Civil Division, Federal Programs Branch
							*Attorneys for Defendant*
9							*United States of America*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28