**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Daniel Travieso, | No. CV-20-00523-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Glock Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant, Glock Incorporated's, Motion to Dismiss for Failure to State a Claim and pursuant to the Protection of Lawful Commerce in Arms Act ("PLCAA"). (Doc. 19.) Plaintiff filed a response, (Doc. 21), and Defendant has filed a reply. (Doc. 25.) Part of Plaintiff's response challenged the constitutionality of the PLCAA, 15 U.S.C. §§ 7901-7903. (Doc. 21 at 13-17.) As such, the United States has intervened pursuant to 28 U.S.C. § 2403(a) and Fed. R. Civ. P. 5.1(c) and 24(a)(1) to defend the constitutionality of the statute. (Doc. 30.) Oral argument on the matter was held on February 12, 2021, and after hearing from all parties, the Court took the matter under advisement. (Doc. 37.) The Court now issues the following decision.

## I.    Factual and Procedural Background

On March 17, 2018, Plaintiff, Carlos Daniel Travieso, was shot in the back with a Glock 19 nine-millimeter handgun ("the handgun"). The shooting occurred while Plaintiff was travelling home from a youth camping trip in a church leader's vehicle. (Doc. 1 at 8.) The handgun was also in the vehicle. (*Id*. at 7.) By way of facts not clear in Plaintiff's

Complaint, a fourteen-year-old girl ("the Shooter") who was in the vehicle came into possession of the handgun. (*Id*.) While the Shooter possessed the handgun, it discharged, firing the live round in its chamber. (*Id*.) Plaintiff was hit by the round in his back and suffered numerous severe spinal injuries and injuries to his organs, including injuries that rendered him a paraplegic. (*Id*. at 8-9.)

No criminal charges were filed against any party connected to the shooting. (*Id*.) Plaintiff's Complaint alleges that the handgun's magazine had been removed. (Doc. 1 at 8.) The Complaint further contends that, due to the absence of a magazine, the Shooter was deceived into believing the magazine was empty, even though a live round remained in the chamber. (*Id*.) Plaintiff alleges that at the time of the shooting, the gun had not been modified in any significant way and retained the same features and "lack of safety features and warnings" as it did when manufactured and sold. (*Id*. at 7-8.)

This alleged lack of safety features is the center of Plaintiff's suit. Plaintiff asserts his shooting "resulted from the negligent, reckless, unnecessary, and unreasonably dangerous actions of Defendants, including their design, manufacturing, marketing, distribution, and sale of a handgun without a magazine disconnect safety, effective loading chamber indicator, internal lock, or other safety features that would have prevented it from being fired by a child or any other person who did not have proper authority or maturity to use it, or effective warnings." (*Id*. at 12.) Plaintiff brings four claims against the Defendants. His first claim alleges that Defendants are liable to him under a theory of strict products liability based on the defective design of their product. (*Id*. at 17-20.) Second, he alleges that Defendants are liable to him under a theory of strict products liability for an "information defect" and the failure to place adequate warnings on their product. (*Id*. at 21-24.) Plaintiff's third and fourth claims are for negligence rather than for strict products liability. (*Id*. at 24-25.) His third claim alleges Defendants had a duty not to expose others to unreasonable risks of injury and breached that duty by the negligent design of the handgun. (*Id*. at 24.) His fourth claim also alleges Defendants had a general duty not to expose others to reasonably foreseeable risks of injury, and that Defendants breached that

duty by "by negligently marketing guns," and providing inadequate warnings on the firearms themselves. (*Id.* at 25-26.) Plaintiff also seeks punitive damages against the Defendants for alleged willful and wanton disregard for others. (Doc. 27-28.)

Defendant Glock Incorporated has responded to the Complaint with a Motion to Dismiss, (Doc. 19), arguing Plaintiff's claims against it are barred by the PLCAA because the Plaintiff's shooting was caused by the criminal act of a third party. (*Id.* at 6) Defendant alleges the shooter's criminal acts include possession of a handgun by a juvenile in violation of 18 U.S.C. § 922(x)(2)(A), possession of a handgun by an unemancipated minor in violation of Ariz. Rev. Stat. § 13-3111(A), endangerment in violation of Ariz. Rev. Stat. § 13-1201(A), as well as assault and aggravated assault in violation of Ariz. Rev. Stat. §§ 13-1204(A)(1) & (2). (Doc. 19 at 6.)

Plaintiff filed a Response, (Doc. 21), arguing the correct statutory construction of the PLCAA shows the statute is inapplicable to the present case. Plaintiff also argues that even if the general statute did apply, his claims are allowed under the PLCAA's "product defect exception." (*Id.* at 5-8); 15 U.S.C. § 7903(5)(A)(v). Finally, Plaintiff argues that if the PLCAA does bar its action, then the statute itself is unconstitutional under the Fifth and Tenth amendments to the United States Constitution. (Doc. 21 at 11-17.)

Defendant in turn filed a Reply, (Doc. 25),  arguing that the PLCAA's immunity clearly applies, and further arguing that the "product defect" exception does not apply because the shooting of Plaintiff "was caused by a volitional act that constituted a criminal offense[.]" (*Id.* at 2-3. (quoting 15 U.S.C. § 7903(5)(A)(v))).

Because Plaintiff challenged the constitutionality of the PLCAA, the United States also intervened to defend the PLCAA's constitutionality. (Doc. 30.) The Government argues the PLCAA is a constitutional application of Congress's enumerated powers under the Commerce clause. (*Id.* at 8.) Further, the Government contends this Court's resolution of the constitutionality of the PLCAA is bound by the decision of the Ninth Circuit in *Ileto v. Glock*, which directly rejected Plaintiff's arguments. 565 F.3d 1126, 1131 (9th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010).

## II.     Legal Background

### A.  The PLCAA

On October 26, 2005, Congress enacted the PLCAA into law. 109 P.L. 92, 119 Stat. 2095. The PLCAA prohibits "the institution of a 'qualified civil liability action' in any state or federal court." 15 U.S.C. § 7902(a). The act defines a "qualified civil liability action" as

> A civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of [a firearm that has been shipped or transported in interstate or foreign commerce]…for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party…[.]

15 U.S.C. § 7903(5)(A); *see also* 15 U.S.C. § 7903(4). While the PLCAA creates an immunity from "qualified civil liability actions," this immunity is subject to several exceptions. 15 U.S.C. § 7903(5)(A)(i)-(vi). For example, the statute does not protect a seller who knowingly transfers a firearm that will be used in a crime of violence, nor a seller being sued for negligent entrustment or negligence per se. Nor does the PLCAA protect a manufacturer or seller who knowingly violates "a State or Federal statute applicable to the sale or marketing" of a firearm. Most applicable to this action, the PLCAA does not give immunity from:

> an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, *except that where the discharge of the product was caused by a volitional act that constituted a criminal offense*, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage…[.]

15 U.S.C. § 7903(5)(A)(v) (emphasis added).

### B.  The Second Amendment

The PLCAA was partly passed to safeguard the Second Amendment from efforts to

indirectly assault the right to bear arms. *see* 15. U.S.C. §§ 7901(a)(1)-(3), (b)(2). The Second Amendment defends an individual's right to "keep and bear arms lawful purposes," which the Supreme Court has called "fundamental[ly]…necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778, 781 (2010).  The Second Amendment also protects "ancillary rights" necessary to realize the core right to possess a firearm. *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (citing *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2799 (2015)). After all, the fundamental right to bear arms "'wouldn't mean much' without the ability to acquire arms." *Id.* (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).

The PLCAA guards against infringement of Second Amendment rights by ensuring a citizen's continued ability to "acquire arms." *Teixeira,* 873 F.3d at 677; 15 U.S.C. § 7901(b)(2). The Act operates by preventing efforts to achieve regulation by litigation, in which groups seek to gain by judicial decree policy goals which, from constitutional defect or lack of political power, are unattainable through the legislative process. 15. U.S.C. §§ 7901(a)(8). Such efforts are especially suspect where they implicate the Court's duty to defend rights protected by the Constitution from attack. THE FEDERALIST No. 78 (Alexander Hamilton) (Giving to the judiciary the duty to safeguard the Constitution from attack and stating that "Without this, all the reservations of particular rights or privileges would amount to nothing.")

### C.  Previous Ninth Circuit Litigation

Since its enaction, the PLCAA has been litigated numerous times in both state and federal courts. The Ninth Circuit examined multiple challenges to the act in the case of *Ileto v. Glock*, 565 F.3d 1126 (9th Cir. 2009). In *Ileto*, a gunman illegally in possession of multiple firearms, shot and injured five people at a community center in California. *Id.* at 1130. The same gunman later shot and killed Joseph Ileto. *Id.* Ileto's widow and the other victims brought a civil action against manufacturers and sellers of the guns used in the shooting. *Id.* During the pendency of the case, Congress passed the PLCAA. *Id.* at 1131.

1   Confronted with the statute, the *Ileto* plaintiffs argued it did not apply to their case because
2   their claims fell within the "predict exception" of the PLCAA. *Id*. at 1132. In the alternative
3   the *Ileto* plaintiffs argued the statute was unconstitutional. *Id*. at 1131. However, the Ninth
4   Circuit was unconvinced.

5        Instead, the Ninth Circuit found the plaintiffs' claims were barred by the PLCAA's
6   general prohibition against civil actions unless one of the PLCAA's exceptions applied. *Id*.
7   at 1131-32 (citing 15 U.S.C. § 7903(5)(A)). The *Ileto* court further held that plaintiffs' case
8   did not fall within the "predict exception" of the PLCAA and as such their claims were
9   barred. *Id*. at 1136. Finally, the *Ileto* court rejected the plaintiffs' contention that the
10  PLCAA was unconstitutional. In holding the Act constitutional, the court noted it was
11  "carefully constrained…to the confines of the Commerce Clause." *Id*. at 1140. Further, the
12  court held that the PLCAA passed rational basis scrutiny, the plaintiffs had no vested
13  property interest in their claim "until a final unreviewable judgment [was] obtained," and
14  that regardless, the PLCAA did not "completely abolish [p]laintiffs' ability to seek redress,"
15  because claims against other defendants were permitted. *Id*. at 1140-44.

16  ### III.    Standard of Review

17       To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet
18  the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the
19  claim showing that the pleader is entitled to relief," so that the defendant has "fair notice
20  of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,
21  550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal
22  under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence
23  of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*
24  *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal
25  theory will survive a motion to dismiss if it contains sufficient factual matter, which, if
26  accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*,
27  556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In ruling on a Rule 12(b)(6)
28  motion to dismiss, the well-pled factual allegations are taken as true and construed in the

light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

This Court's decisions are bound by the past rulings of the Ninth Circuit. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.")) "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues or his own court of appeals who have ruled on a controlling legal issue[.]" *Id*. at 1170. "Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law." *Id*. "In determining whether it is bound by an earlier decision, a court considers not merely the 'reason and spirit of cases' but also 'the letter of particular precedents.'" *Id*. (citing *Fisher v. Prince*, 97 Eng. Rep. 876, 876 (K.B. 1762)). "This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected, and the views expressed in response to any dissent or concurrence." *Id*. Thus, where applicable circuit law governs an issue, this Court *must* apply it to the case. *Id*. at 1171 ("Circuit law…binds all courts within a particular circuit, including the court of appeals itself.").

**IV.   Analysis**

Plaintiff brings arguments based on the statutory construction of the PLCAA as well as arguments alleging the PLCAA is unconstitutional. Whenever possible, a court should avoid passing on constitutional questions if there are other grounds upon which a case may be disposed. *See Pearson v. Callahan*, 555 U.S. 223, 241 (2009); *see also Scott v. Harris*, 550 U.S. 372, 388 (2007) (Breyer, J., concurring) (quoting *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)); *see also Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question

although properly presented by the record, if there is also present some other ground upon which the case may be disposed of"). As such, the Court turns first to Plaintiff's arguments regarding the statutory construction of the PLCAA.

### A. Statutory Construction of the PLCAA and the Federalism Canon

Before turning to the substantive construction of the PLCAA, the Court will address the impact of the federalism canon[1] on its analysis. The core of the federalism canon is that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance." *United States v. Bass*, 404 U.S. 336, 349 (1971); *see also John v. United States*, 720 F.3d 1214, 1223 n. 52 (9th Cir. 2013). Thus, the Court requires a clear statement of congressional intent before it will "presume Congress to have authorized…a stark intrusion into traditional state authority." *United States v. Walls*, 784 F.3d 543, 547 (9th Cir. 2015) (quoting *Bond v. United States*, 572 U.S. 844, 866 (2014)).[2]

However, Plaintiff argues the federalism canon requires more. Plaintiff argues that even where Congress has expressly preempted the states, the federalism canon impacts this Court's analysis on *the scope* of that preemption. Thus, Plaintiff, at various junctures, argues this Court must construe the PLCAA as preventing only "novel" and "ungrounded" theories of tort relief, (Doc. 21 at 17), and argues the Court cannot construe the PLCAA to apply to traditional common law tort theories in the absence of *additional clear statements* that the scope of preemption reaches those claims. (*See*, *e.g.*, Doc. 21 at 5-6, 7-8 (arguing the scope of the PLCAA's preemption cannot bar Plaintiff's claims absent an

---

[1] Defendant and the Government mistakenly argue Plaintiff's federalism arguments as based on the canon of constitutional avoidance. While the federalism canon is related to the canon of constitutional avoidance, the doctrines are not synonymous. *See*, *e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 16-17 (1981) (listing cases where Congress's actions were admittedly constitutional, but still required a clear statement of Congress's intent to upset the traditional balance of state and federal power).

[2] For the purposes of this motion, the Court will assume without deciding that the PLCAA interferes with a sphere of traditional state authority. *But see United States v. Morrison*, 529 U.S. 598, 611 (2000) (quoting *United States v. Lopez*, 514 U.S. 549, 577 (1995) (Kennedy, J., concurring) (referring to areas of "traditional state concern" as "areas having nothing to do with the regulation of commercial activities")).

"unmistakable intent" to do so.).)

Plaintiff is incorrect to argue that federalism requires an additional "clear statement" of the statute's preemptive scope. Once the Court establishes Congress's clearly stated intent to preempt the states, "any understanding of the scope of a pre-emption statute must rest *primarily* on 'a *fair understanding of congressional purpose*.'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996) (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 530 n.27 (1992) (emphasis added)). Further, the purpose and scope of preemption is "primarily...discerned *from the language of the pre-emption statute* and the 'statutory framework' surrounding it." *Id.* (citing *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 111 (1992)). The Court considers the "'presumption against the pre-emption of state police power regulations' to support a narrow interpretation [of the preemption's scope.]" *Id.* at 485; *but see Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) (declining to apply the presumption against preemption to the "express preemption clause" of a bankruptcy statute). However, unlike the federalism canon, the presumption against preemption is a *presumption*, *not a "clear statement"* rule. It helps govern the Court's choice between two plausible constructions of a statute, but does not override the unambiguous intent of Congress as revealed by the text and framework of the law. *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (applying the presumption against preemption "when the text of a pre-emption clause is susceptible of more than one plausible reading"); *see also Bates Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

Here the PLCAA contains a clear statement of Congress's intent to preempt the states. 28 U.S.C. § 3702. As such, the role of the Court is merely to construe the scope of that preemption in light of the congressional purpose of the statute as revealed by the text and statutory framework. *Altria Group*, 555 U.S. at 77; *Bates*, 544 U.S. at 449; *Medtronic*, 518 U.S. at 485-86; *Cipollone*, 505 U.S. at 530 n.27; *Gade*, 505 U.S. at 111. While the Court will factor the presumption against preemption of the states into its analysis, *Medtronic*, 518 U.S. at 485, the presumption is merely one factor in the Court's analysis. It will not override the intended purpose of Congress revealed by the text and framework

of the PLCAA. *Altria Group*, 555 U.S. at 77.

**B.  Scope of the PLCAA's Preemption of "Qualified Civil Liability Actions"**

Plaintiff argues that due to the federalism canon, the correct statutory interpretation of the PLCAA shows the Act was not intended to bar his case. Plaintiff further argues the PLCAA only "limit[s] liability where harm was 'solely caused' by criminal or unlawful misuse." *See* 15 U.S.C. § 7901(b)(1), (a)(6). Finally, Plaintiff appeals to the legislative history of the PLCAA, arguing that the statements of some legislatures indicate the act was never intended to bar claims like the Plaintiff's. The Court will examine each argument in turn.

**1.    The Scope of PLCAA Preemption reaches Plaintiff's Claims**

Plaintiff argues that once the interests of federalism are factored into the Court's analysis, the PLCAA's preemptive scope is correctly construed as reaching only novel claims and was not intended to preempt established theories of common law liability. However, the text and statutory framework of the PLCAA defeats Plaintiff's argument. The PLCAA clearly states Congress's intent to intrude on Arizona's authority to hear qualified civil liability actions. 15 U.S.C. § 7902(a) ("[Q]ualified civil liability action[s] may not be brought in any Federal or State court."). Further, a fair reading of the PLCAA shows that Congress intended the scope of its preemption to include claims like the Plaintiff's. The PLCAA's plain text extends preemption to Plaintiff's tort and products liability claims. Its unambiguous terms bar *any* civil cause of action, regardless of the underlying theory, when a plaintiff's injury results from "the criminal or unlawful misuse" of the person or a third party, unless a specific exception applies. 15 U.S.C. §§ 7902(a), 7903(5)(A). Further, the provisions of the law indicate Congress intended to generally preempt common law torts.

The doctrine of *expressio unius est exclusio alterius* also shows Congress intended the scope of preemption to bar cases like the Plaintiff's because the PLCAA contains specific exceptions allowing limited distinct common law causes of action. "The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a

presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)).

The PLCAA designates specific common law actions still allowed under the act. 15 U.S.C. §§ 7903[5][A][i]-[vi]. The exceptions listed allow "action[s] for negligent entrustment or negligence per se," "action[s] for breach of contract or warranty," as well as certain products liability actions. 15 U.S.C. §§ 7903[5][A] (ii), (iv)-(v). Under *expressio unius est exclusio alterius*, the PLCAA's designation of specific common law causes of action as exempt from its preemptive scope shows its preemption was intended to reach common law actions not so designated. This result accords well with the Ninth Circuit's conclusion in *Ileto*, where that court also found the explicit exclusion of *per se* negligence actions evidenced a congressional intent to preempt other common law tort claims. 565 F.3d at 1135 n.6.

The canon against surplusages also shows that Congress intended for the scope of the PLCAA's preemption to reach Plaintiff's claims. Courts have "long followed the principle that 'statutes should not be construed to make surplusage of any provision.'" *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (1996) (quoting *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989)); *see also Corley v. United States,* 556 U.S. 303, 314 (2009); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS  174 (2012) (noting no provision should be given an interpretation which causes it to have no consequence). Yet, if the Court finds Congress did not intend the PLCAA's preemption to reach established common law claims, then most of the statute's exceptions would be meaningless. If the scope of preemption was meant to be as limited as Plaintiff claims, there would be no need to include specific exceptions in the law allowing actions for *per se* negligence, negligent entrustment, breach of contract, breach of warranty, or products liability. The Court cannot accept a reading of the statute's operative provisions that renders such a large section

meaningless.

## 2. The PLCAA's Prefatory Language Does Not Narrow its Preemptive Scope

The Court is not alone in referencing the canon against surplusage to interpret the PLCAA. Plaintiff himself makes a similar argument. Plaintiff argues the PLCAA's purposes section indicates the act was passed "[t]o prohibit causes of action for the harm *solely caused* by the criminal or unlawful misuse of firearms." 15 U.S.C. § 7901 (b)(1) (emphasis added). A similar statement in the PLCAA's findings section decries "[t]he possibility of imposing liability…for harm that is *solely caused* by others." 15 U.S.C. § 7901(a)(6) (emphasis added). Plaintiff argues these and other statements show the PLCAA was only intended to preempt cases where a plaintiff sought to hold a gun manufacturer liable for conduct wholly beyond its control, not cases like Plaintiff's where wrongful conduct is alleged on the part of the gun manufacturer. Plaintiff argues that this is the only possible construction of the PLCAA because any broader construction would render the phrase "solely caused" superfluous.

While instructive, a statute's purposes section cannot control over the law's express terms. Preambles and prefatory language, such as the findings and purposes section of the PLCAA, are valid sources for determining congressional intent. ANTONIN SCALIA & BRYAN A. GARDNER, READING LAW 167-70 (2012). However, these sources are used to resolve ambiguities, not to create them, and it is well established that the purposes section of a statute will not control in the face of clear enacting provisions. *Jogi v. Voges*, 480 F.3d 822, 834 (7th Cir. 2007) (citing cases); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989); 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47.04, at 146 (5th ed. 1992, Norman Singer ed.). In the present case, the language of the PLCAA's enacting provisions clearly shows Congress intended to preempt a broader scope of actions than those suggested by the Plaintiff. As such, the recitation of the phrase "solely caused" in the purposes section will not control the Court's analysis.

Further, Plaintiff's suggested interpretation is a greater departure from the canon

against surplusages because, as discussed, it renders many of the statute's exceptions meaningless. If the Court were to give credence to Plaintiff's argument that the PLCAA only bars cases where the harm is "solely caused" by third parties, it would be hard pressed to explain why exceptions were needed  to allow action of negligence *per se* or negligent entrustment. 15 U.S.C. § 7903(ii). Plaintiff's proffered construction also renders the predicate exception entirely superfluous; if PLCAA preemption never covered cases alleging any wrongful conduct by a manufacturer, then the exception allowing actions for a seller's knowing violation of State or Federal gun laws would be completely unneeded. 15 U.S.C. § 7903(iii). This construction would also render parts of the "products liability" exception superfluous. 15 U.S.C. § 7903(v). The products liability exception states that "where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act *shall be considered the sole proximate cause*" of any harm. *Id.* (emphasis added).  This limitation on proximate cause would be rendered absolutely meaningless if the PLCAA in general only applied to cases where harm was "solely caused" by a third-party bad actor. The Court will not read the inclusion of "solely caused" in the statute's purposes section to render entire sections of the statute's enacting provisions meaningless.

### 3.    The PLCAA's Legislative History Does Not Favor the Plaintiff

Plaintiff argues that the legislative history of the PLCAA favors adopting his narrow interpretation of the law's preemptive scope. Like statutory preambles, legislative history can be used to resolve ambiguous language in a statute, but does not control over the clear and express terms of a law. *BedRoc Ltd.*, 541 U.S. 176, 187 n. 8 (2004) ("resort to legislative history *only when necessary to interpret ambiguous statutory text*" (emphasis added)). Further, courts must remain critically aware of the tendency of "[j]udicial investigation of legislative history…to become an exercise in 'looking over a crowd and picking out one's friends.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005) (citing WALD, SOME OBSERVATIONS ON THE USE OF LEGISLATIVE HISTORY IN THE 1981 SUPREME COURT TERM, 68 Iowa L. Rev. 195, 214 (1983)).

It appears to the Court that, contrary to Plaintiff's suggestion, the legislative history of the PLCAA does not uniformly evidence Congress's intent to adopt a narrow scope of preemption. Statements of multiple congressional speakers suggest the PLCAA was intended to preempt the sorts of product liability suits that might be used as a roundabout method of regulating the firearms industry. *See* 151 Cong. Rec. 104 at S9074, S9087. Further, the legislative history of the PLCAA specifically referenced the *Ileto* case as what the PLCAA was intended to preempt, *Ileto*, 565 F.3d at 1137 (citing 151 Cong. Rec. E2162-03), even though the *Ileto* plaintiffs had brought claims under established common law theories of negligence and public nuisance.

For the above reasons, the Court finds that Congress intended the preemptive scope of the PLCAA to generally bar common law cases like Plaintiff's. 15 U.S.C. §§ 7902(a); 7903(5)(A). As such, the PLCAA requires the Court to dismiss Plaintiff's claims unless one of the exceptions to its preemption applies. *See* 15 U.S.C. §§ 7903(5)(A)(i)-(vi).

**C. Statutory Interpretation of the PLCAA's Product Liability Exception**

Plaintiff argues that even if the Court finds the scope of the PLCAA extends to common law claims generally, his theories of relief are still allowed under the products liability exception to the PLCAA. 15 U.S.C. § 7903(5)(A)(v). The product liability exception states that the PLCAA will not bar

> an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage…[.]

*Id*. According to Plaintiff, this exception means that even if the PLCAA generally preempts cases against manufacturers, claims like Plaintiff's, alleging a firearm was defectively designed, are still allowed. In response, Defendant points out that product liability claims are still preempted "where the discharge of the product was caused by a volitional act that constituted a criminal offense[.]" 15 U.S.C. § 7903(5)(A)(v). However, Plaintiff argues

this "exception to the exception" does not apply because there is no clear statement of Congress's "intent to bar products liability cases…involving an unintentional act of a juvenile." (Doc. 21 at 10-11.) Plaintiff further argues that under the canon of meaningful variation the PLCAA's product liability preemption should not apply to accidental shootings by a juvenile because such shooting are not criminal offenses under Arizona law. Finally, Plaintiff argues that his injuries were not caused by the shooter's "volitional" act. The Court will again examine each of the arguments in turn.

### 1.  The Product Liability Exception and "Information Defect" Claims

Before construing the product liability exception, the Court notes this exception, by its plain terms, can do nothing to save Plaintiff's claims based on alleged information defects or for inadequate warnings in Defendant's products. The Ninth Circuit previously held that in passing the PLCAA, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto*, 565 F.3d at 1135. The *Ileto* court noted this conclusion was bolstered "by Congress' inclusion of…15 U.S.C. § 7903(5)(A)(ii)." *Id.* at 1135 n. 6. The court explained the specific inclusion of 15 U.S.C. § 7903(5)(A)(ii), allowing claims for negligence per se and negligent entrustment, demonstrated that Congress consciously considered how to treat tort claims and elected to preempt all theories of relief except those included in the exception. *Id.*

Under the same rational, this Court concludes that even if the "product liability" exception allows Plaintiff's claim for design defect, it does not allow his claims of information defect or for inadequate warnings. Products liability claims are almost uniformly brought on one of three theories: (1) defects in the design, (2) defects in the manufacturing process, or (3) defects based on inadequate instructions or warnings to reduce a foreseeable risk of harm posed by the product. *See* Restatement (Third) of Torts: Products Liability, § 2. Yet, while the PLCAA specifically creates an exception for "action[s] for…damage resulting directly from a *defect in design or manufacture* of the product," 15 U.S.C. § 7903(5)(A)(v) (emphasis added),  it has no similar exclusion for actions resulting from defective instruction or inadequate warnings. The inclusion of the

"products liability" exception in 15 U.S.C. § 7903(5)(A)(v) "demonstrates that Congress consciously considered how to treat [products liability] claims." *See Ileto* 565 F.3d at 1135 n. 6. The fact that Congress carved out an exception specifically allowing cases based on defective design and manufacture without creating a similar exception for "information defect" and "inadequate warning" claims can only lead this Court to presume the omission was intentional. As such, the Court concludes that even if it adopts Plaintiff's construction of the "products liability" exception, the scope of that exception will not allow Plaintiff's information defect and inadequate warning claims to go forward.

### 2.      Clear Statement of Intent in 15 U.S.C. § 7903(5)(A)(v)

Plaintiff essentially reiterates his argument above that under the federalism canon the PLCAA must be construed narrowly. According to Plaintiff, "[the] PLCAA does not unmistakably state an intent to bar products liability cases…involving an unintentional act of a juvenile." However, as noted *supra*, the PLCAA does contain a clear statement of Congress's intent to preempt the states. To determine whether the scope of that preemption extends to this case, the Court looks primarily to the statute's text and framework with the goal of reaching "“a *fair understanding of congressional purpose*.’” *Medtronic*, 518 U.S. at 485-86 (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 530 n. 27 (1992) (emphasis added)). Though the Court should consider the "‘presumption against the pre-emption" in construing the scope of preemption narrowly, *Medtronic, Inc.*, 518 U.S. at 485, the ultimate goal is to discover Congress's intent. Because of this, the Court rejects Plaintiff's argument that his interpretation of the products liability exception is compelled by the absence of an additional plain statement expressly extending the PLCAA to "cases…involving an unintentional [shooting by] a juvenile." Instead, the Court will determine the scope of preemption based on its understanding of Congress's purpose.

### 3.      Canon of Meaningful Variation

Plaintiff also argues that under the canon of meaningful variation, differences in the statute's language indicate his case is allowed because Plaintiff was shot by a juvenile. The meaningful variation canon states that where Congress uses certain language in one part of

the statute and different language in another, the variation is presumed intentional and the different words should be given different meanings. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993); *Russello v. United States*, 464 U.S. 16, 23 (1983).

Two applicable subsections of the PLCAA have differing language. In 15 U.S.C. § 7903(5), the law generally preempts "civil action[s]…resulting from the *criminal or unlawful misuse* of a qualified product…[.]" (emphasis added). However, the products liability exception of the PLCAA only preempts actions "where the discharge of the product was caused by a volitional act that *constituted a criminal offense*," without mentioning the term "unlawful misuse."[3] 15 U.S.C. § 7903(5)(iv) (emphasis added). Plaintiff argues due to this difference "the exclusionary phrase of the products liability exception only bar[s] cases involving "criminal" discharges, while allowing cases involving "unlawful" but not "criminal" discharges." (Doc. 21 at 6.) Plaintiff argues that under Arizona law, an accidental shooting by a fourteen-year-old would be handled by the juvenile justice system. As such, while the shooter might be found delinquent, she would not face an actual criminal conviction. (Doc. 21 at 7 (citing A.R.S. § 8-207(A)). Due to this, Plaintiff asserts, the shooting of the Plaintiff was not a "criminal" offense and the product liability exception allows the suit. However, the Court disagrees.

In the present case, the Court finds that the Shooter's actions consisted of a criminal offense for the purposes of the PLCAA. As Defendant notes, the actions of the Shooter violated multiple criminal statutes including the federal law against possession of a handgun by a juvenile, 18 U.S.C. § 922(x)(2)(A), Arizona's laws against possession of a handgun an unemancipated juvenile, A.R.S. § 13-3111(A), reckless endangerment of another person, A.R.S. § 13-1201(A), and assault and aggravated assault by recklessly causing physical injury, A.R.S. §§ 13-1203(A)(1), 13-1204(A)(1) & (2). (Doc. 19 at 6.) While Plaintiff argues the Shooter's status as a juvenile means she cannot be convicted of a criminal offense, this is both factually incorrect and not controlling the applicability of

---

[3] Though not referenced by the Plaintiff, the PLCAA actually defines the term "unlawful misuse" to mean "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9).

the PLCAA.

Despite Plaintiff's assertion to the contrary, under Arizona law the Shooter can be charged with a criminal offense. A.R.S. § 13-501(B)(4) (allowing fourteen-year-old defendants to be tried as adults when "accused of… [a] class 3, 4, 5 or 6 felony involving a dangerous offense."); A.R.S. § 13-105(13) (defining dangerous offense as "an offense involving the discharge, use or threatening exhibition of a deadly weapon"). While the decision whether to charge the Shooter as an adult is discretionary, the Court cannot believe that the PLCAA's preemption hinges on whether the state actually exercises this discretion of how to charge a shooter. To hinge the effect of the PLCAA on a state's discretionary choice would be contrary to Congress's purpose. The applicability of an act intended to preempt and prevent state action would be rendered entirely dependent on an individual state officer's charging decision. For similar reasons, the Court believes the PLCAA's preemption of product defect cases is triggered by the criminal nature of the volitional act, not on whether the individual person is actually charged by the state.

Further, the PLCAA's product liability preemption is triggered by the criminal nature of the act, not whether the actor is or can be charged with the crime. *Compare* 15 U.S.C. §§ 7903(v) *with* 7903(i). Here, even if a juvenile shooter would not face a criminal conviction, the finding of delinquency would be based on an admittedly criminal act. *See* A.R.S. § 8-201(12); *JV-502820 v. Superior Court,* 181 Ariz. 243, 245 (Ariz. Ct. App. 1995). As such, the Court is convinced that regardless of whether the Shooter would face criminal charges, the criminal nature of the act triggers the PLCAA's preemption. This accords with the result reached in other courts examining the application of the PLCAA to juvenile offenses. *See Adames v. Sheahan*, 233 Ill. 2d 276, 309-14 (2009).

The canon of meaningful variation does not require a different result. The PLCAA defines the term "unlawful misuse" to mean "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9) (emphasis added). This definition covers much more than conduct constituting a "criminal offense," as there are many acts which violate statutes and ordinances but do not trigger criminal

penalties. *See, e.g., United States v. Palmer*, No. CR 09-00536 MMM, 2012 U.S. Dist. LEXIS 200428, at *13 (C.D. Cal. July 30, 2012) (citing *Mossew v. United States*, 266 F. 18, 22 (2d Cir. 1920) ("By failure to provide a penalty for an infraction…the statute does not denounce the unlawful act as criminal.")). So, the term of "unlawful misuse" in 15 U.S.C. § 7903(5)(A) extended the PLCAA's preemption not only to cases where a third party's act could be a criminal offense, but also to situations where the act "violate[d] a statute, ordinance, or regulation" that relates to the use of a firearm, but carries no criminal penalties. 15 U.S.C. § 7903(9). Alternatively, the products liability exception limits its preemption only to situations where the act is one which consists of a criminal offense. 15 U.S.C. § 7903(5)(A)(iv). This distinction adequately explains the difference in the statue's language without resort to a convoluted distinction based on the nature of criminal charges rather than the nature of the criminal act.

### 4.  Defining "Volitional Act"

Plaintiff next argues his shooting was not the result of a "volitional act," because the Shooter did not intend to fire the gun at the Plaintiff. Plaintiff argues that "volitional" is an undefined term in the PLCAA, but that the Court should construe volitional to mean intentional, because Arizona court's use the terms "volitional" and "intentional" interchangeably.  However, the Court finds Plaintiff's argument unavailing.

First, while the term "volitional" often requires more than mere negligence, an act need not be "intentional" to be "volitional." *See, e.g., United States v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001) (construing crimes of violence under 18 U.S.C. § 16 as "not…requiring specific intent, but rather merely *a volitional act equivalent to recklessness*." (emphasis added)). Thus, the mere fact the Shooter did not *intentionally* shoot the Plaintiff or fire the gun does not mean she did not act *volitionally*. Second, even if the Shooter did not intentionally fire the gun, a third party is not required to intentionally discharge a gun before the PLCAA will apply. The preemption is triggered if the injury is caused by "a volitional act that constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v). Apart from firing the gun, the Shooter certainly took other volition acts that were criminal

offenses, such as intentionally taking possession of the gun and pulling the trigger while in a vehicle with the gun pointed at another person. *See* 18 U.S.C. § 922(x)(2)(A); A.R.S. § 13-3111(A); A.R.S. § 13-1201(A). Under the PLCAA's terms, these actions alone are sufficient to trigger preemption of Plaintiff's product liability claims. As such, it is clear to the Court that by her possession and behavior while in possession of the handgun, the Shooter took multiple volitional actions that constituted criminal offenses.

Having construed the PLCAA's general preemption provision and the PLCAA's product liability exception, the Court finds the PLCAA does bar Plaintiff's claims against the Defendant where, as here, the shooting is caused by criminal possession and recklessness of a third party. Thus, if the PLCAA is constitutional, Plaintiff's claims must be dismissed.

### D. The Constitutionality of the PLCAA

Plaintiff argues that if the PLCAA bars his claims then the act itself is unconstitutional. Specifically, Plaintiff argues the act violates his rights to due process and equal protection under the Fifth Amendment. (Doc. 21 at 15-17); U.S. Const. amend. V. Plaintiff also argues that the statute violates the Tenth Amendment to the United States Constitution by infringing on the states' lawmaking authority and attempting to dictate what branch of government is used to develop state law. (*Id*. at 13-14); U.S. Const. amend. X. The Ninth Circuit has previously considered the constitutionality of the PLCAA. *Ileto*, 565 F.3d at 1140-44. To the extent the *Ileto* opinion addresses or applies to Plaintiff's claims, the Court is bound by that ruling. *Hart v. Massanari*, 266 F.3d 1155, 1170-71 (9th Cir. 2001). "This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected, and the views expressed in response to any dissent or concurrence." *Id*.

### 1.    Plaintiff's Fifth Amendment Challenge

The Court is bound to rule against Plaintiff's Fifth Amendment claims because binding Ninth Circuit precedent forecloses his challenge. Plaintiff brings two challenges under the Fifth Amendment, one based on due process and one based on equal protection.

(Doc. 21 at 15-17.)

Plaintiff's due process claim alleges that "the PLCAA violates the Due Process Clause of the Fifth Amendment because it eliminates any remedy for victims of gun industry negligence like Carlos." (*Id*. at 15.) However, the Ninth Circuit has held that the "the PLCAA d[oes] not violate…procedural due process…[and] does not completely abolish Plaintiffs' ability to seek redress," *Ileto*, 565 F.3d at 1142,  and the Court is bound by this ruling. Further, even were the Court not so bound, Plaintiff's claim is plainly factually incorrect. Plaintiff may still pursue remedies against the owner of the gun and the actual shooter who caused him harm; he simply has elected not to.

Plaintiff's equal protection claim is similarly unavailing. Plaintiff argues the PLCAA violates the Equal Protection Clause "by creating a system in which victims of gun industry negligence may recover damages in states with legislation codifying liability standards, but not in states relying on common law." (Doc. 21 at 17.) Plaintiff seems to concede that rational basis scrutiny applies to this challenge, but argues the PLCAA nonetheless can't pass rational basis scrutiny. (*Id*.) Plaintiff's argument is both factually incorrect, and barred by Ninth Circuit precedent. The argument is factually incorrect because the PLCAA bars liability for common law theories of liability even when those standards have been codified. *See Ileto*, 565 F.3d at 1137 ("the PLCAA preempt[s]…theories of liability even in jurisdictions…that have codified such causes of action."). Regardless, Plaintiff's argument is barred by precedent because the Ninth Circuit has previously held that the PLCAA passes rational basis review. *Id*. at 1140 ("There is nothing irrational or arbitrary about Congress' choice here[.]").

In light of the above, the Court finds that the PLCAA is not unconstitutional under the Fifth Amendment's due process or equal protection requirements.

## 2.     Plaintiff's Tenth Amendment Challenge

Plaintiff also argues that the PLCAA violates the Tenth Amendment because "because it purports to bar certain common law claims against gun companies, while allowing identical claims that involve a statutory violation." (Doc. 21 at 13.) Plaintiff

alleges the Act is an "attempt by congress [*sic*] to dictate how a state will make its law…[by] dictat[ing] which branch of government must be used to make liability law applicable to the firearms industry." (*Id.*) According to Plaintiff "[t]his scheme violates principles of federalism enshrined in the Tenth Amendment [because] Congress has no authority to …deprive a state of its right to choose which branch of government to use to make law[.]" (*Id.* at 14.) However, the Court finds Plaintiff's argument unpersuasive because the PLCAA was passed pursuant to Congress's enumerated power to regulate interstate commerce.

The PLCAA does not violate the Tenth Amendment because it is a constitutional exercise of Congress's specifically enumerated power to regulate interstate commerce, and Plaintiff has not shown the act commandeers state officials. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. However, when Congress passes a law pursuant to the enumerated powers delegated to it under the Constitution, the only applicable limitation of the Tenth Amendment is its anti-commandeering doctrine. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 396-97 (2d Cir. 2008) (citing *Printz v. United States*, 521 U.S. 898, 933 (1997); *New York v. United States*, 505 U.S. 144, 161-66 (1992)); *see also City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1118 (9th Cir. 2014) (finding the supremacy clause allows Congress to lawfully abridge a state's powers when "properly exercise[ing] its enumerated powers" as long as it does not commandeer state officials). Here, the Ninth Circuit has previously held that the PLCAA is a carefully constrained exercise of Congress's enumerated power to regulate interstate commerce. *Ileto*, 565 F.3d at 1140. So, as long as the PLCAA does not run afoul of the anti-commandeering doctrine, Plaintiff's Tenth Amendment challenge must fail.

Plaintiff never even expressly argues that the PLCAA violates the anti-commandeering doctrine. Instead, he simple states in a single sentence that the PLCAA is not permissible preemption "since 'every form of [permissible] preemption is based on a

federal law that regulates the conduct of private actors, not the States.'" (Doc. 21 at 14 (citing *Murphy v. NCAA*, 138 S. Ct. 1461, 1481 (2018)). However, the Court does not agree. As Plaintiff's own cited case explains: "[e]xpress preemption…is often obscured by the language used by Congress in framing preemption provisions." *Murphy*, 138 S. Ct. at 1480. And Courts must "look beyond the phrasing employed" to examine if the act is permissible preemption rather than commandeering. *Id*. For example, in the *Murphy* case the Court found the Airline Deregulation Act of 1978 was properly construed as a preemption statute even though its phrasing seemed to regulate the conduct of states rather than private actors. *Id*. The *Murphy* Court noted that regardless of the statute's framing of language, the provision operated like all other federal preemption laws "confer[ing] on private entities (i.e., covered carriers) a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id*. The same rational applies to the PLCAA which "confers on private entities [(i.e., manufacturers)] a federal right to engage in certain conduct [(the sale of qualified products)] subject only to certain (federal) constraints." *Murphy*, 138 S. Ct. at 1480.

Plaintiff argues that even where Congress is clearly acting pursuant to its expressly delegated authority, the Tenth Amendment prevents Congress from "infringing on state lawmaking authority, or [depriving] a state of its right to choose which branch of government to use to make law." (Doc. 21 at 14.) However, the legal support for Plaintiff's argument is unpersuasive. Plaintiff quotes *Erie Railroad v. Tompkins* to argue that "whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." 304 U.S. 64, 78 (1938). But to hold this quote forward as an inhibition on Congress's ability to regulate state law pursuant to its enumerated powers is an exercise in selective quotation. The very next paragraph of *Erie* quotes and adopts Justice Field's dissent in *Baltimore & Ohio R. Co. v. Baugh*, clarifying that "[s]upervision over either the legislative or the judicial action of the States is in no case permissible *except as to matters by the Constitution specially authorized or delegated to the United States.*" *Erie R.R.*, 304 U.S. at 79 (quoting *Baugh*, 49 U.S. 368,

401 (1893)); *see also*, *Alden v. Me.*, 527 U.S. 706, 754 (1999); *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 549 (1985); *Schneckloth v. Bustamonte*, 412 U.S. 218, 263 (1973).  Here Congress has acted pursuant to its authority, delegated to it by the Constitution, to regulate interstate commerce. As such, Plaintiff's reference to *Erie* is not grounds to find the act unconstitutional.

Plaintiff also argues the PLCAA violates the Tenth Amendment under *Matter of Vargas*, a New York State case finding a federal law could not simply order which branch of the state will exercise its sovereign powers. 131 A.D.3d 4 (2015). However, the *Vargas* case is easily distinguishable. First, the Court notes that *Vargas* rests on dubious grounds when weighed against the numerous Supreme Court cases referenced establishing Congress's power to supervise state action on matters specifically within its delegated powers. *Supra* at 22.  Second, the case is not binding authority, and has had minimal impact outside of the specific context of undocumented aliens being admitted to the New York bar. *Matter of Vargas*, 131 A.D.3d 4 (2015). Third, unlike the statute at issue in *Vargas*, the PLCAA does not simply allow states to "opt out" and allow tort claims as long as the legislature creates them. (Doc. 21 at 14.) While the statute's restrictions in *Vargas* became inoperative as soon the legislature acted, the PLCAA preempts tort actions regardless of what branch creates them. It does not matter if they are developed by the courts or codified by the legislature. *See Ileto*, 565 F.3d at 1136.

For the above reasons, the Court finds the PLCAA is a constitutional exercise of Congress's enumerated power to regulate interstate commerce. The statute is constitutional and suffers no defect under either the Fifth or Tenth Amendment to the United States Constitution.

///

///

///

///

///

**V.      Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant Glock Incorporated's Motion to Dismiss for Failure to State a Claim and pursuant to the Protection of Lawful Commerce in Arms Act (Doc. 19) is **GRANTED.**

Dated this 10th day of March, 2021.


Honorable Susan M. Brnovich
United States District Judge