**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Daniel Travieso, | No. CV-20-00523-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Glock GesmbH, et al., | |
| Defendants. | |

Before the Court is Defendant Glock Ges.M.B.H.'s ("Glock") Motion for Summary Judgment ("MSJ") Based on Release. (Doc. 92.) Plaintiff Carlos Daniel Travieso filed a Response (Doc. 95), and Defendant a Reply (Doc. 103). Defendant also filed a Separate Statement of Undisputed Material Facts in support of the MSJ (Doc. 93), and Plaintiff submitted a Controverting Statement of Facts in Response (Doc. 99). All were filed under seal. Oral argument was scheduled for April 5, 2023. However, after consideration of the pleadings and the relevant law, the Court finds that oral argument is not necessary and will vacate oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). The Court will also grant Glock's MSJ for the following reasons.

**I.   BACKGROUND**

Plaintiff became a paraplegic after being shot with a Glock Model 19 Gen5 semi-automatic pistol on March 17, 2018. (Doc. 92 at 2.) Plaintiff was participating in a youth camping trip organized by ███████████████████████████████████████. (Docs. 92; 93; 99 at 2.) ████████████████████████████████, owned the pistol and

1  kept it inside his vehicle during the camping trip. (Docs. 93; 99 at 2.) ▮

2  ▮

3  ▮

4  ▮ The pistol was visible between the front console and front passenger seat.

5  (*Id.*) The pistol was loaded with a cartridge in the chamber and cartridges in the magazine.

6  (*Id.*)

7  During the drive home, ▮ left Plaintiff and the minors unattended in the car

8  while he entered a convenience store. (*Id.*) During this time, C.M.T., a fourteen-year-old

9  girl seated in the backseat, asked Plaintiff, seated in the front passenger seat, to pass her

10  the pistol. (*Id.*) Plaintiff removed the pistol's magazine before passing it to C.M.T. (*Id.*

11  at 3.) Plaintiff did not eject the cartridge in the chamber. (*Id.*) Mistakenly thinking the

12  gun was unloaded, C.M.T. pulled the trigger while the pistol was pointing at the front seat.

13  (*Id.*) The bullet struck Plaintiff in the back, resulting in serious injuries, including

14  paraplegia. (*Id.*)

15  After the incident, Plaintiff and ▮ began settlement discussions. Plaintiff's

16  counsel and ▮ exchanged emails on January 15, 2019, consisting of negotiations

17  and changes to a proposed settlement agreement. (Doc. 92 at 3.) For example, Plaintiff's

18  counsel requested a specification that the settlement agreement be construed under Arizona

19  law. (*Id.*) Plaintiff's counsel also requested ministerial edits, changes to the structure and

20  payment terms of the settlement funds, and for the confidentiality terms to not apply to

21  specific government agencies that serviced Plaintiff. (*Id.* at 4.) The parties executed the

22  final "Settlement Agreement and Release of All Claims" ("Settlement Agreement") on

23  January 16, 2019, for ▮ (*Id.* at 3–4, 93-3 at 5–10.)

24  Over a year later, Plaintiff—through the same counsel—sued Glock, alleging the

25  pistol from Plaintiff's incident is defectively designed, Defendants failed to provide

26  appropriate warnings, and Defendants were therefore nonparties at fault. (*Id.* at 4–5.)

27  Glock served discovery requests on Plaintiff and production subpoenas addressed to

28  nonparties—▮. (Doc. 92 at 5.) Plaintiff never disclosed to Glock that

he raised a prior claim against ▮▮▮▮ arising from the same incident, or that he received a settlement from ▮▮▮▮. (*Id.*) Glock alleges they learned of the Settlement Agreement after serving a subpoena on ▮▮▮▮. (*Id.*)

Plaintiff opposed Glock's attempt to obtain the subpoena, resulting in a discovery conference and Glock's filing a Motion to Compel. (*Id.*) However, the parties agreed to the disclosure of the Settlement Agreement without further judicial intervention (*see* Doc. 83). (Doc. 92 at 5.) Now, Plaintiff and Glock dispute the meaning of the Settlement Agreement. Glock argues Plaintiff's current claims are barred by the Settlement Agreement's terms because it precluded any claim against a third party and the "settlement sum constitutes a complete settlement, discharge and accord and satisfaction of a disputed sum." (*Id.* at 2.) Plaintiff argues he only waived claims against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

The relevant sections discussed read:

1. **Release of All Claims**
The undersigned Releasor hereby acknowledges that in consideration of the settlement payments described below, Releasor, on his own behalf and on behalf of all persons claiming through him with respect to **the above-described Loss**[1], does hereby fully and forever release and discharge Releasees and their respective officers, directors, employees, agents, servants, companies or entities, successors and assigns of and from any and all past, present or future claims, counterclaims, demands, rights, damages, costs, expenses, or loss of any kind (including loss of consortium) which Releasor has, has had or may subsequently discover that he has on or about March 17, 2018 as a result of the accidental discharge of a firearm owned by ▮▮▮▮ (the "Accident"). The Release provided applies to all claims or actions including those that are presently, known, those that are unknown, those that have already accrued and/or those that accrue in the future.
Releasor acknowledges and agrees that this **Release is intended to be construed broadly** to resolve any and all claims or disputes that may arise between him and Releasees, directly or indirectly, related to the Accident.
2. **Future Damages**
Insofar as the damages and effects resulting from the Accident described

---

[1] The loss is defined as "accidental discharge of a firearm owned by ▮▮▮▮."

herein may not be fully known and may be more numerous or more serious than it is now understood or expected, Releasor agrees, as further consideration of this Agreement, that **the Release applies to any and all injuries, damages and losses resulting from the Accident, even though unanticipated, unexpected or unknown,** as well as any and all injuries, damages and losses (including claims for loss of consortium) which have already developed and which are now mown or anticipated.

**5. No Admission of Liability**

Releasor understands and agrees that this Settlement Agreement and Release of All Claims involves the compromise of a disputed claim. **Releasor agrees, understands and stipulates that payment of the settlement sum constitutes a complete settlement, discharge and accord and satisfaction of a disputed claim.** Releasor further acknowledges and agrees that Releasees do not, in any manner, by virtue of entering into this agreement or paying the settlement sum admit liability to anyone because of any incident, act or omission described in or cognizable by the claims, charges, or causes of action released hereby. By entering into this Agreement, it is the intent of Releasees to void the cost of trial and the uncertainty of liability in the event of litigation of the claims herein released. The existence of this Agreement and the payment of the settlement sum shall not be deemed or construed as an admission of liability on the part of Releasees, by whom liability is expressly denied.

Releasor further understands and agrees that the existence of this Settlement Agreement and payment of the settlement sum does not constitute an admission as to any specific issues upon which a claim for liability could be based including, but not limited to, the claim that any individual acted unreasonably or the claim that any individual is an agent of any of the entities referenced herein for purposes of respondeat superior.

**7. No Additional Claim**

Releasor represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any claims related to the Accident. **Releasor further represents that no additional claims, complaints, demand or petitions will be made by Releasor against any other party potentially liable for the claims hereby released or potentially liable for the losses, damages, injuries and claims covered by this Settlement Agreement and Release of All Claims.** Releasor acknowledges having released any and all existing or potential claims against any and all persons, organizations or entities herein provided. In the event any claim, complaint, petition or demand by any person results, directly or indirectly, in additional liability, exposure or penalty of any kind which requires any form of legal defense or legal assistance, Releasor covenants and agree to indemnify, demand and hold Releasees harmless from all such claims and demands including reasonable attorney fees and other expenses necessarily incurred by Releasees.

**14. Interpretation**
The Releasor acknowledges that the terms of this Agreement were negotiated with the assistance of counsel for each of the parties. Releasor further acknowledges that the terms of this Agreement shall not be interpreted or construed in favor of one party as opposed to the other party due to one party being the drafter.
In the event any portion of this Settlement Agreement and Release of All Claims is deemed invalid, the remaining portions and provisions shall be given their full force and effect so as to preserve a resolution of all claims that the Releasor has against Releasees.

**II.**     (Doc. 93-3 at 5–8, 10) (emphasis added).**LEGAL STANDARD**

Summary judgment must be granted "if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mann v. N.Y. Life Ins. and Annuity Corp.*, 222 F. Supp. 2d 1151, 1153 (D. Ariz. 2002) (quoting Fed. R. Civ. P. 56(c)).  Facts are "material" when under the governing law, it could affect the case's outcome. *Smith v. Internal Revenue Serv.*, 168 F. Supp. 3d. 1221, 1223 (D. Ariz. 2016).  Summary judgment should not be granted if there is a dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1344 (9th Cir. 1981) (noting if a "contract is unclear, ordinarily summary judgment is improper as differing views of the intent of parties will raise genuine issues of material fact").  Nevertheless, it is a question of law whether a contract is ambiguous, and simply because parties disagree to its meaning does alone establish ambiguity. *Id.*  Courts, under Arizona law, will also "read words in the context in which they are used, and [consider] the purposes sought . . . by the agreement." *Bush v. Desert Schs. Fed. Credit Union*, No. 1 CA-CV 12-0157, 2013 WL 506616, at *2 (Ariz. Ct. App. Feb. 12, 2013) (quoting *State v. R.J. Reynolds Tobacco Co.*, 75 P.3d 1075, 1078 (Ariz. Ct. App. 2003)).

Furthermore, settlement agreements are enforced and governed by general contract principles. *Emmons v. County of Maricopa*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998). Interpreting contracts is a question of law when the terms are plain and unambiguous.

1 *Shoen v. Symons*, No. CV09-1548 PHX DGC, 2011 WL 1641760, at *1 (D. Ariz. May 2, 2011). Courts will also attempt to enforce settlement agreements consistent with the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993). Under Arizona law, "the release of one joint tortfeasor is not a release of any other joint tortfeasors" unless one of three exceptions applies. *Adams v. Dion*, 509 P.2d 201, 203 (Ariz. 1973). These include: "the document is intended to release the other tortfeasors, or the payment is full compensation, or the release expressly so provides." *Id.*

### III. DISCUSSION

#### A. First *Adams* Exception: Intent to Release Other Tortfeasors

Glock and Plaintiff dispute whether the Settlement Agreement's language demonstrated an intent to release Glock from liability surrounding the incident.

##### 1. Glock's Interpretation

First, Glock points to Section 1, titled "Release of All Claims," and argues it covers the complete release of claims against ███████████████████████████ ███████████████████████████ ███████████████████████████ related to Plaintiff's incident. (Doc. 92 at 8.) Next, Glock points to Section 7, titled "No Additional Claims," which states that "no additional claims, complaints, demands or petitions will be made by [Plaintiff] against any other party potentially liable." (*Id.*) Furthermore, the Settlement Agreement states that Plaintiff acknowledges "having released any and all existing or potential claims against any and all persons, organizations or entities herein provided" who are "potentially liable for the losses, damages, injuries or claims covered by this Settlement Agreement and Release of All Claims." (*Id.*)

Glock argues that because Plaintiff ███████████████████████ in Section 1, the only purpose for Section 7's additional release was for nonparties like Glock who are not covered in Section 1's definition of "Releasees." (*Id.* at 8–9); *see Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 975 (Ariz. Ct. App. 2010) ("It is a cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render

meaningless another term."); *see also Invitrogen Corp. v. Emps. Ins. Co. of Wausau*, No. CV-06-0232-PHX-MHM, 2007 WL 841413, at *8 (D. Ariz. Mar. 16, 2007) (finding third party was released where "the plain language of the Settlement Agreement evidences the Parties' intent to generate a final conclusion to the underlying coverage litigation as well as any related litigation").

Glock contends that releasing unnamed parties was essential to achieving the Settlement Agreement's stated purpose of preventing further exposure to ▬. (Doc. 92 at 9.) Section 7, in addition to its "hold harmless" clause, contains Plaintiff's agreement to "indemnify, defend and hold Releasees harmless from" any "claim, complaint, petition or demand by any person [that] results, directly or indirectly, in additional liability, exposure or penalty of any kind which requires any form of legal defense or legal assistance." (*Id.* at 10.) Taken together, Glock argues the Settlement Agreement is intended to protect ▬ from exposure by: (1) ensuring Plaintiff would not bring a suit that would subsequently implicate ▬ at fault by releasing all claims; and (2) ▬ would not face additional legal fees or costs if a third party brought a suit relating to the incident because Plaintiff in such a suit must "indemnify, defend and hold ▬ harmless" in such a suit. (*Id.*)

Finally, Glock argues that because Plaintiff filed suit against them, Glock had the right as a third party to name ▬ as a nonparty at fault, in which a jury could be asked to assign fault to ▬ on a public jury form. (*Id.* at 9.) Glock argues this is the very exposure and lack of confidentiality ▬ contracted to avoid, further supporting it was intended to be a Releasee under Section 7. (*Id.*)

### 2. Plaintiff's Interpretation

Plaintiff argues the intent factor of the *Adams* test is not satisfied because Section 7's use of the phrases "hereby released" and "herein provided" establish that the Settlement Agreement, when read as a whole, was not intended to release Glock. (Doc. 95 at 5); *see Ash v. Egar*, 541 P.2d 398, 401 (Ariz. Ct. App. 1975) (noting contracts must "be read as a whole, and every part [must] be interpreted with reference to the whole") (cleaned up)).

- 7 -

Plaintiff argues that these two phrases serve as qualifying language that apply only to claims "hereby released" in the Settlement Agreement and claims directed against of the entities "herein provided" in the Settlement Agreement. (Doc. 95 at 5.)

Furthermore, Plaintiff asserts that Section 1 defines the Settlement Agreement's purpose as "resolv[ing] any and all claims . . . that may arise between [Plaintiff] and █████████████████████████████████████████." (*Id.*) Plaintiff also asserts Section 5's language, titled "No Admission of Liability," "confirms that the Settlement Agreement was only intended to cover claims premised upon the negligence of ████████████████████████████" (*Id.* at 6.) The relied upon language reads:

> Releasor further understands and agrees that the existence of this Settlement Agreement and payment of the settlement sum does not constitute an admission as to any specific issues upon which a claim for liability could be based including, but not limited to, the claim that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

(Doc. 93-3 at 7.) Plaintiff argues that "it lists two illustrative examples of 'issues upon which a claim for liability could be based'—both of which would only be foundational 'issues' in the context of the kinds of negligence claims discussed." (Doc. 95 at 6.) Lastly, Plaintiff argues that Section 14 allows the Settlement Agreement's provisions to be preserved even if one or more provisions are deemed invalid, and that the remining portions should be interpreted "so as to preserve a resolution of all claims that [Plaintiff] has against ████████." (*Id.*) Plaintiff contends this reinforces that the contract is only focused on claims between Plaintiff and ████████. (*Id.*)

For these reasons, Plaintiff argues that Section 7, when read with Sections 1, 5, and 14, demonstrates that the suit against Glock does not constitute the claims against ████████████████████████████████ that were "hereby released," and therefore Glock was not a party "herein provided" by the Settlement Agreement. (*Id.*)

Plaintiff refutes that Section 7 encompasses third parties like Glock. Plaintiff admits that he and ████████ agreed Section 1's definition of Releasees was not broad enough, and that Section 7 was needed as supplementation. (*Id.* at 8.) However, Plaintiff maintains

the context of the entire Settlement Agreement requires the language "against any other party potentially liable for the claims hereby released" must be construed "by virtue of some other connection to ▓▓▓▓▓▓" because the "claims hereby released" arose between Plaintiff and ▓▓▓▓▓▓. (*Id.*)

Plaintiff also argues that *Spain v. Gen. Motors Corp., Chevrolet Motor Div.*, 829 P.2d 1272 (Ariz. Ct. App. 1992) demonstrates that broad language without specific intent cannot be construed to release unnamed parties—as Plaintiff argues we have here. (Doc. 95 at 7.)

### 3. Court's Analysis

The Court finds the first *Adams* exception applies. The Court agrees with Glock that *Spain* is distinguishable. *Spain* involved broad, boiler plate language provided by an insurance company, which is not the case here. As Glock notes, this a ▓▓▓▓▓▓ Settlement Agreement with personalized terms negotiated by Plaintiff and ▓▓▓▓▓▓ through counsel and a third party mediator. *Cf. Spain*, 829 P.2d at 1272–73. *Spain* also lacked any intent by the settling parties to release unnamed third parties. *Id.* at 1273. Such intent exists here.

The Settlement Agreement's plain language demonstrates Plaintiff and ▓▓▓▓▓▓ intent to reach finality as to any litigation related to the accidental discharge of a firearm against any known or unknown defendants, and for any known or unknown injuries. For example, Section 7 states that: "Releasor further represents that <u>no additional claims, complaints, demand or petitions will be made by Releasor against any other party potentially liable for the claims hereby released or potentially liable for the losses, damages, injuries and claims</u> covered by this Settlement Agreement and Release of All Claims." (Doc. 93-3 at 8) (emphasis added). Furthermore, "Releasor acknowledges having <u>released any and all existing or potential claims against any and all persons, organizations or entities herein provided.</u>" (*Id.*) (emphasis added). Section 1 says the release is to be construed broadly. (*See id.* at 5.) Section 2 covers all injuries, damages, and losses known or unknown. (*See id.*)

- 9 -

Likewise, Plaintiff agreed to "indemnify, defend and hold [█████] harmless from" any "claim, complaint, petition or demand by any person [that] results, directly or indirectly, in additional liability, exposure or penalty of any kind which requires any form of legal defense or legal assistance." (*Id.* at 8) (emphasis added).  Section 5 reads: "Releasor agrees, understands and stipulates that payment of the settlement sum constitutes a complete settlement, discharge and accord and satisfaction of a disputed claim." (*Id.* at 6) (emphasis added).  The Court must read the terms together, and in doing so, it is apparent that the Settlement Agreement intended to close ███████ liability and exposure. *See Invitrogen Corp.*, 2007 WL 841413, at *8.

The Court agrees with Glock that Section 1 was designed to exclusively cover ██ ████████████ as releasees, whereas Section 7 was designed to more broadly preclude third party suits—like here—that expose ████████ to further litigation, discovery requests, etc.  Plaintiff asks the Court to interpret Sections 1 and 7 as applying solely to Plaintiff, ████████████████████████.  However, this would render Section 7 superfluous. *See Aztar Corp.*, 224 P.3d at 975.  Section 1's plain language speaks only to ██████████████████. (*See, e.g.*, Doc. 93-3 at 5 (Plaintiff acknowledges that he "hereby fully and forever release and discharge ██████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ (emphasis added))).  Yet, this is in stark contrast to Section 7's use of "against *any other party* potentially liable." (*See id.* at 8) (emphasis added).

Lastly, the Court rejects Plaintiff's argument that Section 7's use of "hereby released" and "herein provided," when viewed in the context of Sections 1, 5, and 14, excludes third party claims.  Plaintiff argues that the only claims "hereby released" are those related to ████████████████████████████.  However, ████████ ████████ language is nowhere in the Settlement Agreement.  In fact, as Glock points out, the Settlement Agreement specifically defines the "loss" as "Accidental discharge of firearm owned by ████████." (*Id.* at 5.)  Plaintiff's claims against

Glock are clearly included in the Settlement Agreement's definition of loss. Even without this broad definition of the loss, the plain language of Section 7 releases "any other party potentially liable for the claims hereby released **or** potentially liable for the losses, damages, injuries and claims covered by this Settlement Agreement." (*Id.*) (emphasis added). Thus, the plain language releases other parties from more than just the "hereby released" claims.

As previously discussed, the plain language of Sections 1 and 7 comparatively demonstrate that the Settlement Agreement was intended to release liability from parties other than ▬▬▬▬▬. Otherwise, Section 7 would be rendered superfluous. Next, Section 5 is titled "No Admission of Liability," and exclusively covers how ▬▬▬ does not admit liability to any negligence or related claims regarding Plaintiff's incident. (*See id.* at 6–7.) ▬▬▬ cannot admit liability on behalf of a third party, so the Court cannot negatively construe the absence of third parties in this section. However, if third party suits were permitted under the Settlement Agreement, it would defeat this Section's enforcement power, as any third party would be entitled to attempt to apportion fault onto ▬▬▬ as a nonparty—as is happening here. Thus, Section 5 is not in conflict with this Court's interpretation. Plaintiff's reliance on Section 14's language regarding Plaintiff's preserving his claims against ▬▬▬ is only applicable if portions of the Settlement Agreement are deemed invalid. Regardless, this provision does not conflict with any section.

Even though the parties dispute the Settlement Agreement's terms, the Court finds the Settlement Agreement is unambiguous for the reasons discussed above.[2] *See Anderson*, 477 U.S. at 248. Giving full effect to every provision of the Settlement Agreement and reading the contract as a whole, *see Bush*, 2013 WL 506616, at *2, the Court finds the contract demonstrates intent to preclude third party liability claims under the first *Adams* exception. *See* 509 P.2d at 203.

### B. Second *Adams* Exception: Intended to Provide Full Compensation

---

[2] Because the Court finds the Settlement Agreement unambiguous, it will not address the parties' parole evidence arguments.

The second *Adams* exception hinges on whether the Settlement Agreement intended to fully compensate Plaintiff for all claims from the incident. If a release only applies to some but not all claims, then the full compensation requirement is not satisfied. *See Burrington v. Gila County*, 767 P.2d 43, 47–48 (Ariz. Ct. App. 1998). Glock relies on the language in Sections 2 and 5 to support the intent to provide full compensation. Specifically, Section 2 states that it "applies to any and all injuries, damages and losses resulting" from the Incident, and Section 5 states that the "settlement sum constitutes a complete settlement, discharge and accord and satisfaction of a disputed claim." (Doc. 92 at 10.) Glock also argues that the amount of settlement—▮▮▮▮▮▮▮—demonstrates the intent to provide full and complete compensation.

Plaintiff argues the language of the settlement agreement demonstrates that it was not intended to fully compensate plaintiff. (Doc. 95 at 9.) Plaintiff argues that the language "applies to any and all injuries, damages and losses" is qualified because it acted as "consideration" underlying the contract. (*Id.*) Plaintiff also argues that the language in Section 5 is qualified by the "disputed claim" language because at the time of the Settlement Agreement, there was no disputed claim between Glock and Plaintiff.

The Court finds that Section 2's language stating the Settlement Agreement "applies to any and all injuries, damages and losses resulting" from Plaintiff's incident, coupled with Section 5's statement that the "settlement sum constitutes a complete settlement, discharge and accord and satisfaction of a disputed claim" satisfy the *Adams* exception and is unambiguous. *See* 509 P.2d at 203. This is especially true when these sections are read in context of the entire agreement, which reads to settle any and all claim, present and future, related to injuries from the accidental discharge of the firearm. And because the Settlement Agreement prevents Plaintiff from initiating third party suits regarding the incident, this further solidifies that full compensation was provided. *Id.*

### IV.    CONCLUSION

The Court finds the Settlement Agreement precludes any and all claims against third

parties related to the accidental discharge of the firearm, including Glock, and that the Settlement Agreement intended to provide full compensation to Plaintiff. And despite both parties filing separate statements of facts, there were no materially disputed facts impacting the Court's interpretation of the Settlement Agreement's language. Therefore,

**IT IS ORDERED** granting Defendant Glock's MSJ. (Doc. 92.)

**IT IS FURTHER ORDERED** vacating oral argument scheduled for April 5, 2023 and instructing the Clerk of Court to terminate this case and **file this order under seal**.

The Court also intends to release a public ruling. Therefore,

**IT IS FURTHER ORDERED** the parties must submit proposed redactions to the Court by no later than **April 7, 2023**.

Dated this 31st day of March, 2023.

Honorable Susan M. Brnovich
United States District Judge